## THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* BOSTON FEAR.

### *Dedication of Streets.*

The owner of a tract of land opened a way through it which was graded, paved and kerbed by him and city gas lamps were erected thereon.   He also built certain houses fronting on this street and in all deeds or leases of the same it was stated that the mention of the street was intended solely for the purpose of description and not as a dedication of the street for public use.   This way had the appearance of a city street and was used by vehicles for the accommodation of residents thereon.   Taxes upon the bed of the street continued to be paid by the owner up to the time of the condemnation proceedings.   *Held,* that there was no intention on the part of the owner to dedicate the street to public use and that these circumstances did not in themselves constitute a dedication.

Appeal from the rulings of the Baltimore City Court on an appeal from the action of the Commissioners for Opening Streets in the matter of the opening of Myrtle avenue from Fulton avenue to Pulaski street.   At the trial the appellee, Fear, proved by himself, that so far as Myrtle avenue extends through his property, he began to grade and pave the same sometime about 1891, when he undertook to develop his tract of land of about twenty acres, through which he cut the street; that he got the grade of the street, at the end nearest Fulton avenue, from the City Commissioner, in February, 1894, in order to get the street on a level with any street the city might bring in contact with it, and that he had graded, kerbed and paved Myrtle avenue as far as he had cut through, beginning this work sometime in 1891, and finishing it sometime in the summer of 1894, and that he has also graded, kerbed and paved two other streets, Payson and Pulaski street, through a part of the same tract of twenty acres, and is still continuing the work on said streets through his entire property of twenty

acres ; that he has built and leased houses on said streets,. and that in every lease or deed made by him, there being about fifty in all, in reference to this property, covering the period from 1891 down to April, 1895, he has caused to be inserted the following covenant: "The mention and reference to Myrtle avenue in the above description is intended solely and only for the purpose of description of the described property, and is not intended in anywise to be a dedication of said street for the public use or as a public highway." That he has paid the taxes on the bed of Myrtle avenue and the other said streets paved and in the course of being paved, up to and including the year 1895, to the Mayor and City Council of Baltimore.

On cross-examination, Mr. Fear testified that he got the City Commissioner to establish the grade as above mentioned ; and that he paved, kerbed and graded Myrtle avenue, and has built and leased houses fronting on it; that the gas company has run pipes through the street to light the houses binding thereon, and the street has city gas lamps to light it ; that Payson and Pulaski streets, which are graded, kerbed and paved as far as the assessments for condemning Myrtle avenue go, and all of the property sold and leased on those streets have covenants in the deeds and leases similar to those in the deeds and leases of Myrtle avenue ; that milk wagons, coal carts and doctors' carriages and other vehicles drive over Myrtle avenue for the accommodation of the residents in the houses binding thereon ; that said streets have in all respects the appearance of public streets ; that any person who desires can drive or walk over Myrtle avenue, or over Pulaski street or Payson street, but that he could stop such travel over said street, and fence them in if he desired, but he has not done so. The Mayor and City Council of Baltimore then offered evidence tending to prove the value of the land and the amount of benefits accruing to the abutting property.

The property owner offered two prayers, the first instructing the jury " that in assessing the benefits to his property,

that the only matter of inquiry for them is the amount of the increase, if any, in the actual market value of the property assessed and belonging to said Fear by reason of the condemnation and opening of Myrtle, now Walbrook avenue, and their verdict, as to the amount of said benefits, shall be limited to the said increase of the market value of his property by reason of the city acquiring said street, and that the burden of the proof rests on the Mayor and City Council to establish to the satisfaction of the jury the extent of the increase in the market value of said property, if any."

To this prayer the Court added the following proviso : " But the jury are not limited to the future and prospective benefits which may result from formal condemnation, and are at liberty to consider the extent, if any, to which the market value of the property has been already enhanced by the actual location of said avenue, in anticipation of its acquirement by the city."

The second prayer instructed the jury that in assessing the damages to which the said Fear is entitled for condemning and opening Myrtle, now Walbrook avenue, between Pulaski street and Fulton avenue, they shall consider and allow him the market value of the property so taken by the Mayor and City Council to be used for said street belonging to said Fear.   (Granted.)

And the Mayor and City Council of Baltimore offered the following prayers :

1st. That from the statements of the property-holder, Boston Fear, made on the stand, which the city accepts, the bed of Myrtle avenue here being condemned, has been dedicated to public use, and that therefore the said Boston Fear is only entitled to nominal damages therefor.   (Rejected.)

2nd. That if Boston Fear, the property-holder, graded, paved and kerbed the portion of Myrtle avenue here being condemned and opened, and threw the same open so that it could be used by the public, with the intention that it should so be used, and that it was so used by the public, that then the said portion of Myrtle avenue is dedicated to

public use, and the said Boston Fear is only entitled to nominal damages for the taking thereof.   (Rejected.)

3rd.  If Boston Fear, the property-holder herein, graded, paved and kerbed the portion of Myrtle avenue here being condemned and opened, and assented to the use of it by the public as if it were a public street, and that the same was used by the public for a year and more past, then the said portion of Myrtle avenue has been dedicated to public use, and the said Boston Fear is entitled to nominal damages only therefor, and this, although the jury may further find that in the leases and conveyances made by him to divers parties, the said Boston Fear has covenanted in the terms set forth in said leases that said conveyances shall not amount to a dedication.   (Rejected.)

4th.  The measure of damages of the property here being condemned, is the fair market value thereof as it stands now between a purchaser willing but not anxious to buy, and a seller ready but not compelled to sell.   (Granted.)

5th.  In assessing the benefits upon the abutting property for the opening of Myrtle avenue, now Walbrook avenue, the jury cannot indulge in vague speculations or conjectures, but must assess such benefits, if any, as it is in their opinion fairly and reasonably apparent that the property of the appellant has received or will receive from the proposed improvement other than the general benefit to the community ; and that nothing is to be considered a benefit which does not enhance the value of the property.   (Granted.)

The Court below (PHELPS, J.) granted the property owner's prayers, and rejected the first, second and third prayers of the Mayor and City Council of Baltimore, and granted their fourth and fifth.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, ROBERTS and BOYD, JJ.

*Thomas G. Hayes, City Counsellor,* and *William S. Bryan, Jr., City Solicitor,* for the appellant.

It seems now to be clearly settled that all that is required to constitute a dedication is the assent on the part of the owner of land to the public use, and the actual enjoyment by the public of the use for such a length of time that the public accommodation and private rights would be materially affected by a denial or interruption of the enjoyment.    2 *Dillon Municipal Corporations*, sec. 631 ; *Elliott on Roads and Streets*, page 93 ; *Angell on Highways*, sec. 143.

Perhaps the most frequent method of making a dedication to public uses is to do as was done in this case, and open a highway through the land and throw it open to public use.    *Lade* v. *Shepard*, 2 Stra. 1004 ; *Hiss* v. *Baltimore and Hampden*, 52 Md. 242 ; *Jarvis* v. *Dean*, 3 Bing. 447 ; *Cincinnati* v. *White*, 6 Peters, 437 ; *Rex* v. *Lloyd*, 1 Campbell, 260.    In this last case, LORD ELLENBOROUGH observed " that if the owner of the soil throws open a passage and *neither marks* by *any visible* distinction that he means to preserve all his rights over it, nor excludes persons from passing through it by positive prohibition, *he shall be presumed to have dedicated it to the public.*"

Another familiar method of dedication is for the owner to convey or lease land and describe it as binding on a certain street as designated in either a public or private plat where the grantor owns the land in the bed of this paper street. This is taken as raising an implied covenant that there shall be a public street, and as thus by estoppel working a dedication.    *Moale's case*, 5 Md. 314 ; *Hawley's case*, 33 Md. 270 ; *McCormick's case*, 45 Md. 512 ; *Hall's case*, 56 Md. 187.    And there have been many examples of this sort of dedication in the records of this Court.    It is, however, only one of the species of dedication.    *McCormick* v. *Baltimore*, 45 Md. 524.

In cases of this last sort, it has been frequently held that clauses in the deed that the streets on the plats are referred to for purposes of description only and are not intended in anywise as dedications or of similar import by showing that there is no intention to dedicate, prevent the dedication

from being worked.     *Glenn* v. *Baltimore,* 67 Md. 391 ; *Pitts* v. *Baltimore,* 73 Md. 326.     And it is conceded that in the case at bar, the insertion in the several deeds and leases of the clause set forth in the evidence prevents *those deeds* from working a dedication.

But our claim is not that these deeds worked the dedication, but that the action of Mr. Fear in paving and throwing the streets open to the public, in allowing gas mains and city lamp-posts to be erected there, and in allowing the public to use them, and the public convenience to attach to their use, has worked the dedication.     *Rex* v. *Lloyd,* 1 Campbell, 260.     It is argued that the placing of these clauses in his deeds showed that Mr. Fear intended no dedication, and that dedication is a question of intention.     It is true that dedication is a question of intention, but it is not of the intention a man has hidden in his breast, but of the intention evidenced by his actions.     *Elliott on Streets and Roads,* pages 92, 93 ; 4 *Bissell,* 437 ; *Ward* v. *Davis* 3 Sandf. 520.     In the case of *City of Columbus* v. *Dalin,* 36 Indiana, 337 : " It is a general rule that to constitute a valid common law dedication, there must be an intention to dedicate, and an act on the part of the owner and an acceptance on the part of the public.     This general rule is, however, subject to modification, that if the owner of a servient estate, intentionally or by gross negligence leads the public to believe that he has dedicated the premises to public use, he will be estopped from denying the dedication to the prejudice of those whom he may have mislead."     *Herman on Estoppel,* sec. 521 ; *Wilder* v. *City of St. Paul,* 12 Minn. 192, and authorities there cited.     See also *Morgan* v. *R. R. Co.,* 96 U. S. 710 ; *Indianapolis* v. *Kingsbury,* 101 Ind. 213 ; *Glymont Co.* v. *Toler,* 80 Md. 293.

The truth is that Mr. Fear probably had two contradictory and impossible intentions ; one was to throw his land open as a public street and gain the advantage therefrom in the development of his property ; to have it and use it as a public street, and have the city light it and pave it as a

street; and while thus deriving all the advantages of having a public street run through his land, to derive at the same time the inconsistent advantage of having this same land treated as private property when it comes to paying for the condemnation. To use a homely phrase, he desires " to have his cake and eat it too."

*R. B. Tippett* and *Robert H. Carr, Jr.*, for the appellee.

The decisions of this Court and of the Courts throughout the country are too numerous to cite, holding that, in order to constitute a dedication, there must be an unequivocal intent on the part of the ground owner, and the rule is founded upon the principle that a man should not be deprived of his property without just compensation. There is nothing in Mr. Fear's action or conduct, as disclosed by his testimony, to show that he intended to dedicate this street. All that has been done by him was in the way of developing and improving his property in a manner that he thought was most advantageous to himself. The things which the appellant claims to constitute a dedication are clearly rebutted by the fact that Mr. Fear paid the taxes on the bed of this street down to and including 1895. If he intended to dedicate the street to public use it does seem to be unreasonable and idiotic that he should have continued to make the reservations in all of his conveyances and pay the taxes down to the present time on the property. Does not the payment of taxes for the year 1895 negative any intention on his part to dedicate the property? The city did not produce a witness who ever heard Mr. Fear say or intimate that he intended to give this street to the public. Numerous cases have arisen where Courts have held that certain acts and conduct amount to a dedication, but in all these cases there was no expression on the part of the land owner as is found in the deed here. The Courts in those cases were governed by facts and circumstances which do not arise in this case. Inasmuch as the city undertakes to try the question raised here upon Mr. Fear's own testimony as to intent, it is

bound by all that he has said, and it is confidently sub-
mitted that no reasonable mind upon reading his testimony
in this case can conclude that it was his intention to dedi-
cate the street.   2 *Dillon Mun. Cor.*, sec. 637, 638–636 ;
*Elliott on Roads and Streets*, pg. 96 ; *Angell on Highways*,
sec. 142.

The law of dedication where the grants contained reser-
vations very similar to the one at bar is fully set forth in
the case of *Pitt* v. *Mayor and City Council of Baltimore*, 73
Md. 338, and the authorities there cited.   It seems to us
that in passing upon a question of this kind the Court is to
look mainly at the conduct and action of Mr. Fear with
reference to his vendees, as it is the conduct and actions
towards purchasers that generally constitute a dedication ;
and in cases where the Courts hold that a dedication has
been made it is upon the principle that the deeds and con-
veyances imply a covenant with the purchaser that the
street should forever remain open for public use, but it is
evident that there can be no such implied covenant in this
case, as said purchasers were expressly told that they had
no rights in the bed of the street, and the city has failed to
produce a single purchaser of those fifty lots or more sold
by Fear to testify that he, said purchaser, understood or
claimed any rights to the use of said street as a public high-
way.   Therefore if the purchasers of said lots and improve-
ments can make no claim to said street, how can it be con-
tended to belong to the public generally?   If Mr. Fear did
not give this street for the benefit of those to whom he sold
his property and who had a direct interest in it, why should
he give it to the public ?   What claim did the public have
on him that he should give this street to it and refuse it to
his vendees.   Therefore if there be no such covenant ex-
pressed or implied from Mr. Fear to his vendees there
could be no dedication, because, as said before, the theory
of dedication is in transactions as between the vendor and
vendee.   There being no evidence in this case from which
the jury could find any intent to dedicate, the Court below

was right in refusing appellant's second prayer, and from
what has been said it is obvious that the first and third
prayers were properly refused.

ROBERTS, J., delivered the opinion of the Court.

This case was tried before the Baltimore City Court on
appeal from the finding of the Commissioners for Opening
Streets in said city, and this appeal arises on the action of the
lower Court in granting certain instructions of the appellee,
and in refusing certain of those of the appellant.   There is
but one question in the record for us to consider, and that
relates to the alleged dedication of that portion of Myrtle
avenue (now Walbrook avenue), which extends from Fulton
avenue to Pulaski street.   The facts are few and simple.
The appellee was the owner of a tract of land through
which Myrtle avenue was partly opened by him and certain
improvements in the matter of grading, paving and kerbing
were made by him.·  This work, begun in 1891, was contin-
ued to 1894, and up to within a short time of the commence-
ment of the condemnation proceedings by the city.   Some
of the lots binding on said street the appellee sold and
leased under certain deeds, the first of which he executed
about the time that he commenced to open said street, and
continued to make such conveyances to April, 1895.  Before
proceeding to develop his land, the appellee got from the
City Commissioner the grade of Myrtle avenue that he
might be enabled to get the same on a level with any street
the city should bring in contact with it.   The appellee has
built and leased houses fronting on this street, and the Gas
Company has run its pipes through the street to light the
houses binding thereon, and the street has city gas lamps to
light it, and milk wagons, coal carts and doctors' carriages
and other vehicles drive over it for the accommodation of
the residents of the houses binding thereon. That in every
deed or lease made by the appellee he has caused to be in-
serted the following covenant: "The mention and reference
to Myrtle avenue in the above description is intended solely

and only for the purpose of description of the described property, and is not intended in anywise to be a dedication of said street for the public use or as a public highway."

The taxes for the bed of Myrtle avenue have been continuously paid by the appellee up to the date of condemnation by the appellant. Save the testimony of experts as to the value of the land, the aforegoing constitutes all the material testimony in the record. There is but one exception in the record, which is taken by the appellant to the granting of the appellee's first prayer as amended by the Court, and the granting of the appellee's second prayer, and to the refusal by the Court to grant the appellant's first, second and third prayers.

The argument before the Court and upon the brief of the appellant relates solely to the refusal of the Court to grant its three prayers. But independently of this fact, we are very clearly of the opinion that the principles of law announced in the first and second prayers of the appellee are entirely free from objection, and that the Court's amendment to the first prayer gave to the appellant a fair and liberal construction of its rights and certainly all that it was, under the circumstances, entitled to receive.

The Court correctly refused the appellant's first prayer and for manifest reason. This prayer asked the Court to instruct the jury that, " from the statements of the property-holder, Boston Fear, made on the stand, which the city accepts, the bed of Myrtle avenue, here being condemned, has been dedicated to public use, and that therefore the said Boston Fear is only entitled to nominal damages therefor." This Court has so frequently declared the principles of law which ought to prevail in cases of dedication *vel non*, that we do not deem it necessary at this time to enter upon any extended discussion of the general doctrines relating to this subject.

We will, however, refer to a few of the decisions of this Court in which the question of intention has been discussed, for the reason that the intention of the appellee, as applied

to the use of the bed of Myrtle avenue, is the only matter of consequence on this appeal. The late MR. JUSTICE IRVING, delivering the opinion of this Court in the case of *Glenn* v. *Mayor, &c., of Baltimore*, 67 Md. 400, said: " This Court has repeatedly held that whether a dedication of a street or road was effected in any case, depends entirely upon the intention of the parties in each particular case ; and that one of the methods of ascertaining the intention is by fairly considering all the circumstances surrounding the transaction and subject-matter. *Mayor, &c., of Baltimore* v. *White & Shipley*, 62 Md. 362 ; *McCormick* v. *Mayor, &c., of Baltimore*, 45 Md. 512 ; *Hawley* v. *Mayor, &c., of Baltimore*, 33 Md. 270–80." Again in the case of *Pitts* v. *Mayor, &c., of Baltimore*, 73 Md. 332, the late MR. JUSTICE MILLER, delivering the opinion of this Court, said : " It has been decided by this Court in a number of cases, that in order to make out a dedication, an intent on the part of the owner to dedicate his land to the particular use alleged, is absolutely essential, and unless such intention is clearly proved by the facts and circumstances of the particular case, no dedication exists." To the same effect are the cases of the *Mayor, &c., of Baltimore* v. *White & Shipley*, 62 Md. 362 ; *McCormick* v. *Mayor, &c., of Baltimore*, 45 Md. 512 ; *Hawley* v. *Mayor, &c., of Baltimore*, 33 Md. 270, and a long line of authorities of other States.

Whilst the use of land is frequently acquired for the benefit of the public by dedication, such acquisition must not rest upon light and fragmentary proof, but must be founded upon substantial facts. Applying the aforegoing principles to the testimony of the appellee, there can nowhere be found in the record any proof to sustain the appellant's contention as stated in its first prayer. There is no proof in the record which establishes the fact that Myrtle avenue was used by anyone, save such as attended upon the wants and conveniences of the persons who had bought or leased land from the appellee abutting on said avenue. It is a well-recognized principle in the law applicable to this subject,

that when there is a dedication of land, it must be for the benefit of the public and not for a *particular portion* of it.

It is contended by the appellant that the clause inserted by the appellee in the various conveyances executed by him, for the lots abutting on Myrtle avenue, did not have the effect of indicating on the part of the appellee an intention *not* to dedicate.    The conveyances were executed and duly recorded, and each contained the clause hereinbefore stated. And whatever may have been the intention of the appellee in requiring said clause to be inserted in said conveyance, it is very clear that he was not hiding his " protest in his breast," but was, so far as said conveyances could be made to accomplish his purpose, proclaiming the fact that the mention and reference to Myrtle avenue was intended solely and only for the purpose of description, and not in anywise to be a *dedication* of said streets for the public use.

If the testimony in the record of this appeal could be construed to mean a dedication of the bed of Myrtle avenue, there would be few cases in which the appellant would be required to pay more than nominal damages for the bed of any street ; a most convenient method of acquiring property, but one not to be commended.

In what we have said in the discussion of the appellant's first prayer we have practically and substantially disposed of the second and third prayers of the appellant, and further comment is unnecessary.    We, in conclusion, think that the jury was properly instructed, and for the reasons assigned, affirm the rulings below.

*Rulings affirmed with costs.*