CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* REDDING.

Opinion delivered June 12, 1916.

1. STREETS AND SIDEWALKS—STREETS INCLUDE SIDEWALKS.—The streets of a city or town extend to and include that portion thereof, occupied and used for sidewalks.

2. RAILROADS—MAINTENANCE OF STREET CROSSINGS—EXTENT.—In constructing and maintaining crossings over public roads and streets railroad companies must anticipate the reasonable demands of the public, and where the traffic requires it, the crossing must be made available for the entire width of the road or street.

3. RAILROADS—PUBLIC STREET CROSSINGS—MAINTENANCE—EXTENT.— Defendants track crossed a street in a certain town, which street was extensively used by pedestrians as well as vehicles, it was the duty of the defendant company to maintain a crossing in good repair the entire

width of the street, including the sidewalks on either side of the street, and that it would be- liable in damages for an injury resulting to a pedestrian from a breach of that duty.

Appeal from Logan Circuit Court, Southern District; *James Cochran,* Judge; affirmed.

*Thos. S. Buzbee* and *George B. Pugh,* for appellant.

The company is not required to construct a footway across the tracks between the ends of the sidewalks at the street crossing, and no liability was incurred for the injury. There was a well-constructed crossing 15 to 25 feet wide in the middle of the street. Act No. 36, Acts 1905, amending § 6681 Kirby's Digest and *Ib.* § § 6682, 6683; Act No. 301, Acts 1907, § 1. The council had passed no ordinance under this act. The court erred in its instructions.

*Robert J. White,* for appellee.

The sidewalk was a part of the street and it was appellant's duty to maintain the sidewalk crossing. 3 Elliott on Railroads (ed. 1897), § 1092; 49 N. E. 2; 65 *Id.* 192; 7 Pac. 442; 67 Cal. 130; 128 *Id.* 141; 56 Pac. 201; 11 Kans. 384; 73 Ind. 194; 65 N. E. 192; 30 *Id.* 156; 65 *Id.* 192; 175 S. W. 415. The court properly instructed the jury as to the railroad's duty under the common law and our statutes.

SMITH, J.  Appellee undertook to cross appellant's railroad track at the principal street crossing in Bigelow, Arkansas, a town of a thousand or fifteen hundred inhabitants. It was alleged in the complaint that appellant had failed to make the crossing safe for pedestrians. There was proof to the effect that appellee's fall and injury were attributable to the condition of the track at the point where she crossed. The evidence shows that there was a safe crossing in the middle of the street, about 16 feet wide; but the proof also shows that while this space could be used by pedestrians in crossing the track that it was ordinarily used only by vehicles and that pedestrians crossed the track generally on the edge

of the street by walking straight across from the end of the sidewalk which reached to the right of way on one side and the end of the sidewalk which reached to the right of way on the opposite side.

Appellant concedes that there is no substantial conflict in the testimony and states the question at issue as follows:

"The question involved in this case is whether or not a railway company is required to construct a footway across its roadbed and railroad tracks between the ends of a sidewalk which runs along beside the street up to within fifteen or twenty feet of the ends of the cross-ties on each side of the roadbed where the street crosses the railroad, and is liable for an injury to a pedestrian for its failure to do so."

The proof shows this street was largely used in the travel from one side of the town to the other and that 75 to 90 per cent. of the pedestrians walked along the sidewalk until they reached the end of it near the railroad track and then continued straight across the roadbed to the end of the sidewalk on the other side.

Instructions were given at the request of appellee which told the jury, in effect, that it was appellant's duty to use ordinary care and diligence to put and maintain the crossing in a reasonably safe condition for pedestrians in crossing the track at the point at which appellee crossed; while instructions were refused which appellant requested which told the jury that appellant's duty was discharged if it maintained in the center of the street a crossing which was safe for pedestrians, and that the fact that people walked along the side of the street and had thereby made a pathway across the roadbed did not impose upon appellant the duty to keep the pathway safe for pedestrians.

(1)   In one of the instructions the court told the jury that "the sidewalk and walkway for pedestrians along the public streets are parts of the public street."

Appellant insists that this was an issue of fact which was in dispute and that the court should not have elimi-

nated this question from the consideration of the jury. But we think no error was committed here in so charging the jury. The streets of a city or town extend to and include that portion thereof occupied and used for sidewalks. *City of Bloomington* v. *Bay*, 42 Ill. 503; *State* v. *Berdetta*, 73 Ind. 185; Vol. 7, Words & Phrases, title "Sidewalks," p. 6506.

The language above quoted was contained in instruction numbered 2 and that entire instruction reads as follows:

"2. The sidewalks and walkways for pedestrians along the public streets are parts of the public streets and the defendant is under the same obligation to keep crossings of such sidewalks and walkways over its track in proper condition for the use of pedestrians that it is to keep the middle and other parts of the streets in proper condition for the use of vehicles and persons on horseback; that is, it must use care and diligence of ordinary and reasonable persons under such circumstances considering the dangers and perils to be encountered by persons crossing its track along a public highway; to keep its entire crossing, including the walkway for pedestrians, in a safe condition for the public travel."

The correctness of the remaining portion of the instruction presents the real question in the case.

In the case of *St. Louis, Iron Mountain & Southern Railway Co.* v. *Smith*, 118 Ark. 72, 175 S. W. 415, we quoted from Vol. 8, Am. & Eng. Enc. of Law (2 ed), p. 363, as follows:

"It is the duty of every railroad company properly to construct and maintain crossings over all public highways on the line of its road in such manner that the same shall be safe and convenient to travelers, so far as it can do so without interfering with the safe operation of the road."

And we held in the case cited that the railroad company was responsible in damages for any injury proximately resulting from the failure to perform this duty.

Appellant concedes it would be liable if the injury had been occasioned by a failure to observe this duty; but it says it had discharged this duty by installing a safe crossing in the center of the street of a width of from 15 to 20 feet and that having made a safe crossing in the center of the street it was under no duty to provide a safe crossing in other parts of the street.

The duty of railroads at highway crossings is stated in 3 Elliott on Railroads as follows:

"Sec. 1097. What is included in highway crossing.—Strictly speaking, a highway crossing may be defined as the space included within the boundaries of the right of way and the boundaries of the highway. * * * And where a railway company is required to construct good and sufficient crossings it is held that it is not necessary to construct a crossing the full width of the highway. This, perhaps, would be the rule only where a limited portion of the highway was used for the actual purpose of travel. In cities where the entire width of the highway is used for travel, we are of the opinion that a crossing would, ordinarily at least, be required for the entire width of the highway. And under certain circumstances barriers and guard-rails may be such a necessary part of a railway crossing that the company will be bound to maintain them."

"Sec. 1107. * * * Approaches and embankments need not, as a rule, be constructed over the entire width of the highway. The company has performed its duty in this respect when it has properly constructed approaches and embankments for the width of the portion of the highway available and actually in use. An additional use of the highway for an increased width will, however, necessitate an increased width in the approaches and embankments. * * * It is impossible to lay down any rule defining just what kind of structures shall be used in any particular case. Each particular crossing presents different conditions, but the general rule governing all is the same, and that rule is that the company must erect whatever structures are reasonably necessary

to the safety and convenience of the travelers using the crossing.''

''Sec. 1114e.    Width of crossings to be maintained.—The question is sometimes important as to the width of the highway crossing to be maintained by a railroad company.    Here it seems a sensible rule that the railroad company must construct and maintain crossings and approaches for the entire width of the street in populous and busy cities where great numbers of vehicles and people use them.    But where few people and vehicles use the crossings, the width to be constructed and maintained is to be determined largely by what is reasonably required to accommodate the public travel over such crossings, and it has been observed that this 'is fixed, for the time being at least, by the actual crossings and approaches which are made by the railroad companies with the acquiescence of the public and the public authorities.' ''

In the case of *Ellis, Respondent,* v. *Wabash, etc., Railway Co.,* 17 Mo. App. 126, a statute of that State was reviewed which required railroads to construct and maintain good and sufficient crossings where its railroad crosses public roads.    The court said the statute did not mean that railroad companies are to construct crossings the whole width of the public highways; but the court also said that the streets of a crowded town or city would doubtless be an exception to this rule.

A similar statute of the State of Illinois was reviewed by the Supreme Court of that State in the case of *City of Bloomington* v. *I. C. R. R. Co.,* 39 N. E. 478. It was there said:

''It would be absurd to suppose that the Legislature intended by the act of 1869 to require of railroad companies, in all cases where they crossed public highways outside of the limits of cities and villages, that they should erect, construct and maintain approaches of the entire width of each and all of said highways, and reaching from the natural surface of the ground to the railroad tracks at the crossings.    In most, if not all, of such rural localities, the travel on such roads and highways

did not and does not demand or require more than a fraction of such width of approach. And it cannot be imputed to the Legislature that it was intended to impose so heavy and so useless an expense and burden upon the railroad corporations of the State.''

But the court also said:

''What would be regarded as the approaches to the crossing would largely depend upon the demands of the traveling public, upon the action of the local authorities, and upon what would be reasonable under the circumstances and local situation in each case. It is manifest that they do not and should not in all cases include all that part of the right of way that is covered by the street or highway, and is not immediately at the crossing.''

In the case of *Wabash Railroad Co.* v. *DeHart,* 65 N. E. 192, Mr. Justice Black, speaking for the Supreme Court of Indiana, said:

''The appellant was under legal obligation to maintain the crossing so as not to interfere with the free use thereof by the public, and in such manner as to afford security to life and property thereat. It was its duty to erect and maintain such structure as to make the crossing reasonably safe for persons lawfully and properly using the way. Such obligation and duty rested upon the railroad company by statute, and also without regard to any express statutory requirement.''

(2-3) The manner of discharging this duty is a proper subject of statutory regulation; but the duty is not created by the statute. It exists independently of it. Our Legislature has seen proper to exercise its authority in this respect only by prescribing the elevation of crossings by designating the ratio of horizontal to perpendicular feet; but the duty exists to adapt the width of the crossing to the demands of the public. We are not called upon to say, and do not decide, that the railroad company, must, in all cases, make its crossings co-extensive with the roads and streets over which they are placed, but they must anticipate the reasonable demands of the public, and where the traffic requires it, the crossing must be

made available for the entire width of the road or street. Here was a crossing only 15 to 20 feet in width, whereas the street itself was 50 feet, or more, in width. And the crossing was in the center of the street, whereas the sidewalks used by pedestrians were on the side of the street. There was an intervening space between the edge of the street and the crossing which the railroad company had not prepared for the public use. The walk was used by nearly all of the pedestrians, and the proof shows there was a large amount of such travel. The sidewalk running to the edge of the right of way on each side of the track was, of itself, a constant notice to the railroad company of the route pedestrians would take if they continued directly across the track, and we think it was the duty of the railroad company under these circumstances to restore this part of the street to as safe condition as it was before the construction of its track as was consistent with its use for railroad purposes.

Appellant argues that inasmuch as the town of Bigelow had passed no ordinance to avail itself of the benefits of Act. No. 301 of the Acts of 1907, page 726, the railroad company was under no duty to make this part of the crossing safe. We think, however, that counsel mistake the purpose and effect of this Act. Its title is "An Act to empower councils of cities and incorporated towns to require railroad companies to construct and maintain foot walks to their passenger depots in certain cases." From a perusal of the Act it is seen that it has no application to the facts of this case.

We think no prejudicial error was committed in this case and the judgment of the court below is, therefore, affirmed.