LIZZIE J. BRADY ET AL.

*vs.*

THE MAYOR AND CITY COUNCIL OF BALTIMORE,
A MUNICIPAL CORPORATION.

*Streets: title of public by adverse possession; Baltimore City.*

Under Chapter 9, section 10 of the Acts of 1745, if a riparian owner had not made improvements in front of his property, the State could intercept his rights to make them by a grant of the land covered by water.                                    p. 510

A riparian owner, under that Act, had no vested title to the land covered by water immediately in front of his property, nor to improvements built out of the water, until the improvements were actually completed.                                    p. 510

The Mayor and City Council of Baltimore may acquire title to streets through adverse possession.                                    pp. 511-512

By an ordinance of the Mayor and City Council passed March 25th, 1814, certain plans of the Port Wardens for building docks and opening and extending streets thereto, were approved; the ordinance provided that as a condition precedent for making the improvement, the adjoining owners should give their assent thereto; this assent could be verbal as well as written; the city constructed the docks, filled out and extended the streets as planned; paved the streets, lighted and maintained them; there was evidence showing that the city claimed an adverse right to the streets; there were some further ordinances passed and action taken to widen one of the streets; it was: *Held,* that after 40 years of such use and maintenance of the street as a public street, it was to be assumed that the city had acquired title to the street in fee simple.                                    . p. 513

Prescriptive rights will not run against a municipal corporation or the public to defeat its claim of right to a public street.
                                                                                    p. 513

*Decided May 9th, 1917.*

Appeal from the Superior Court of Baltimore City. (GOR-
TER, J.)

The cause was argued before BOYD., C. J., BRISCOE,
BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*R. E. Lee Marshall* and *Edgar Allan Poe,* for the appel-
lants.

*Alexander Preston, Deputy City Solicitor,* (with whom
was *S. S. Field, City Solicitor,* on the brief), for the appel-
lee.

CONSTABLE, J., delivered the opinion of the Court.

This is an action of ejectment brought by the Mayor, etc.,
of Baltimore against the appellants, in which the appellee
recovered a judgment for the land described in the declara-
tion and damages.

The land in controversy is located at the northwest corner
of Caroline and Dock streets, and forms a part of Dock
street. In 1814, at which time the events began which gave
rise to this controversy, all of this land was under the waters
of the Patapsco River. Queen street runs in the same gen-
eral direction as Dock street, east and west, and is south of
that street. In 1814, John Cunyngham and John Briggs
were the separate owners of two contiguous lots of land, both
of which formed a lot designated on a plat as Lot No. 28.
In 1823, Cunyngham purchased the lot of Briggs and thus
became the sole owner of the whole of Lot No. 28. In 1843,
John Cunyngham and wife, Margaret, conveyed in fee sim-
ple all of their title in Lot 28 to their daughter, whose execu-
tors conveyed the same, in 1889, to E. S. Brady, who was
the immediate predecessor in title of the appellants herein.
Lot No. 28 was situated on the north side of Queen street

with a frontage of sixty feet and a depth of forty feet, towards what is now Dock street.

All the land involved in this case was situated in a part of the city called Fells Point, and for the most part was covered by water. In 1814, the Port Wardens submitted to the City Council a plan for improving that part called the Cove, by making a dock with streets and alleys leading thereto. That plan was delineated on a plat which was filed with the City Librarian, and a copy of which is in the present record. The City Council of Baltimore on March 25, 1814, passed an ordinance, which was duly approved adopting the plan and appropriating six thousand dollars to enable the Port Wardens to proceed with the work as soon as the proprietors of land adjacent to the water should signify their assent thereto. The Wardens proceeded with the work and built the City Dock and the different streets, including Dock and Caroline streets. Dock street had a width of fifty feet and its northern boundary was the southern boundary of the dock. And all the land under water between the fast land to the rear of the properties facing on Queen street and the dock was filled with earth and made fast land and Dock street laid out. It does not certainly appear when this work was completed, but by the agreed statement of facts, it was agreed that such was the fact prior to 1836, and prior to the Act of Assembly next to be mentioned. By Chapter 63 of the Acts of 1836, it was enacted as follows:

"Section 1. *Be it enacted by the General Assembly of Maryland,* That the Mayor and City Council of Baltimore shall have full power and authority to increase the width of Dock street in said city to eighty feet; and to fill up and make said street of the width aforesaid; and that the title thereto, when so made, shall be vested in the Mayor and City Council of Baltimore.

"Section 2. *And be it enacted,* That the Mayor and City Council of Baltimore shall be and hereby are vested with the right and title to any land made or to

BRADY vs. M. & C. C. OF BALTO.        509

Md.]                    Opinion of the Court.

be made by them out of the water, in making and completing the improvement of the City Dock according to the plan heretofore adopted by them; provided, nevertheless, that nothing in this Act contained shall be construed to interfere with the vested rights of individuals."

By Ordinance No. 56, approved March 29th, 1837, the City Commissioners were authorized and directed to widen Dock street thirty feet from its northern boundary line into the dock, thus making its width over all eighty feet, and appropriating over six thousand dollars for the purpose; provided, the proprietors should assent to a relinquishment of all rights they might have in Dock street. On April 25th following, the proprietors executed an agreement whereby they signified their full assent to the improvements made under the Ordinance No. 12 of the year 1814, and, in the language of the agreement, "hereby absolutely renounce and relinquish, abandon and make over to the corporation of the City of Baltimore forever, all the right, title and interest which we, or any of us, our or any of our heirs or assigns, may or can have in or to all the following streets, wharves, block or pier, etc., to wit: * * * all Dock street." They, therein, obligated themselves to execute a more formal assignment to the corporation upon its request or whenever required. This agreement was signed by all the proprietors, Margaret Cunyngham signing for John Cunyngham. The work of widening was then carried to completion in 1839. Numerous ordinances have been passed looking to the care and maintenance of the dock and Dock street. The first fifty feet of the street have been paved, it has been lighted, water and sewer pipes have been installed.

As we have seen the lot in controversy is within the lines of Lot No. 28 extended to the water, and is separated from the original extension of said lot by the original fifty feet of Dock street.

The contention of the appellants is based upon the rights claimed to have been conferred upon their predecessors in title by Chapter 9, Section 10 of the Acts of 1745. This Act, for the purpose of encouraging persons owning water front properties in Baltimore to make improvements in front of their properties, provided: "That all improvements of what kind soever, either wharves, houses or other buildings, that have or shall be made out of the water, or where it usually flows, shall as an encouragement to such improvers be forever deemed the right, title or inheritance of such improvers, their heirs and assigns." And reasoning from that act and the decisions thereon, the appellant argue that the title to all improvements made by the city under the Ordinance of 1814 became vested in their predecessors as the owners of the fast land as soon as they were completed; and further argue that, such being the case, the further extension of the limits of their lot by the improvement by the city, under the Act and Ordinance of 1837, vested in them title to the land in question.

Many interesting and instructive cases are to be found in the decisions of this Court, as to the rights secured to property owners by virtue of this statute. Such as, that the riparian owner had no vested title to the land covered by water immediately in front of his property, nor to the improvements built out of the water, until the improvements had been actually completed. *Girand* v. *Hughes,* 1 G. & J. 249.

And that before the riparian owner had made any improvements in front of his property, the State could intercept his right to make them by a grant of the land covered by water. *Casey* v. *Inloes,* 1 Gill, 430; *Linthicum* v. *Coan,* 64 Md. 439. This right of the State was taken away by Chapter 129 of the Acts of 1862, which forbade the issuance of any patent for land covered by navigable water. And that the rights given to riparian owners under the Act was a valuable

one, of which he could not be deprived by another person without his consent. *Casey* v. *Inloes, supra.*

For the disposition of this case, we do not find it necessary to enter into a discussion of any but one point, for, in our opinion, the question of whether or not the appellee had secured title to the entire bed of Dock street, as it exists, today by adverse possession settles this case.

In the Ordinance of 1814, it was made a condition precedent to the making of the improvements that the proprietors should signify their assent to the plan. This by its terms could be verbal as well as written. It does not appear from the record whether or not this assent was secured. But it does appear that the money appropriated for the work on the above condition was expended and the work done. Of course, at this far day, there is no person who could testify as to that, but the presumption is that the public officials secured such assent in conformity with their expressed duties. From the plan drawn on the plat, it appeared to any one interested in the improvement, that the streets around the dock formed a very important feature of the improvement, and they must have known that the dock would be of very little use as a public improvement without these streets were opened to the public as public highways. When we consider that the plan provided for an extension of Lot 28 of approximately two hundred and fifty feet, thus converting a shallow lot into one of good depth, and making entrance possible from the front and rear, is it not an irresistible presumption that the then two owners of that lot gave their assent readily? After making this street the city has treated it just as any other thoroughfare of the city. They have exercised complete control over it ever since until the present. They have lighted it, paved it, put in water mains and sewers, cared for it in the way of maintenance, and at all times has it been open to the public. Not since it was constructed until the present time has there been a claim made by anyone that the city had not acquired an easement in said fifty foot street for a public thorough-

fare over it.   In fact such a concession was made by the
counsel for the appellant during the taking of testimony.

The situation of Dock street prior to the passage of Chap-
ter 63 of the Acts of 1836, so far as the title to Dock street
was concerned, was that the fee to the bed of that street was
in John Cunyngham subject to the right of travel by the
public thereover.   The fee in John Cunyngham having been
acquired, of course, by virtue of the provisions of the Act of
1745.   It was during this situation of the title that the Leg-
islature of 1837 passed the Act just referred to, by which
the city was given the authority to widen the street to the
extent of thirty feet, and granted to it not only the fee in
the same, when it should be constructed, but also the fee to
the original fifty feet already constructed; and then in use
and occupancy, but, nevertheless, saving to any individuals
any rights with which they might be vested under the Act
of 1745 or otherwise.   It was after this that the ordinance
of March 29th, 1837, was passed directing that the improve-
ment provided for under the Act of 1836, should be carried
into effect, provided that first the proprietors of ground,
bounding on the dock, should execute a deed of conveyance
of the right of wharfage and the bed of the street to the
city.   It was for the purpose of accomplishing that result
that the city obtained on April 25th, 1837, the paper which
we have referred to above.   While this paper is very in-
formally drawn and could hardly be considered of such legal
effect as to convey the rights which it purported to assign,
yet, nevertheless, it does have the effect of showing that the
city thought that it was carrying out the duty imposed upon
it by the ordinance, and believed that it was obtaining a fee
simple title to the bed of the street already built and about to
be built, in consideration of making the additional improve-
ment.   Acting on the belief that title had been obtained by
it, the city proceeded with the work and completed it in 1839
and entered into possession of it and continued in the posses-
sion of the original fifty feet.

As we have said above, while this paper would have no legal effect to change the title to the street yet it does have a great effect in showing that the appellee was occupying the street under the belief that the fee to the same was vested in it, and that therefore, their occupancy was under claim of a supposed right, and therefore adverse. The city continued from 1839 to so occupy the whole of Dock street until the year 1880, a period of over forty years, before claim was made by anyone to any portion of the thirty foot strip. We are then of the opinion that there was abundance of evidence from which it could be found that the appellee had obtained a fee simple title to the whole of Dock street through adverse possession. Therefore the lower Court was correct in refusing to rule as a matter of law that there was no evidence in the case legally sufficient to show that the plaintiff had acquired any title, interest or estate, in or to the strip of land in controversy. The ruling of the Court, in rejecting the prayers of the appellant, dealing with their claim to the benefit of the law of adversary possession as applied to their occupancy, was correct, for the reason that this Court has held that prescription will not run against the city or the public. *Cushwa* v. *Williamsport,* 117 Md. 318-19; *Ulman's Case,* 83 Md. 144-45.

Finding no error in the rulings of the learned Court below we will affirm the judgment.

*Judgment affirmed, costs to the appellee.*