This is a condemnation proceeding for the acquisition in fee by the City of Baltimore of a strip of ground, about 500 feet long and 20 feet wide, situated along the west side of the Fallsway, between Madison and Eager streets. The ground sought to be condemned is a part of one of the freight yards of the Pennsylvania Railroad Company, which it operates under a long-term lease from the Northern Central Railway Company. Both of those companies are parties to the proceeding. Upon the strip of ground in question are located a toolhouse, a car inspector's house, and a track which is used for the storage and shifting of freight cars. According to the uncontradicted evidence, the track just referred to and the ground which the city has proposed to appropriate are essential to the operation of the freight system of the railroad companies, which is congested at that point, and requires in fact more than the space now available even if it remains undiminished by the pending condemnation. The land is desired by the city, as the proceedings show, for use as a public alley; but, as its northern end would be about twenty feet below the level of Eager street and would have no connection *Page 660 
there with any other thoroughfare, and as it is parallel and immediately adjacent to the Fallsway, though below the grade of that avenue, its utility for the purpose indicated is not apparent.
By motion to quash and by a proposed instruction to the jury, the railroad companies urged the view in the Court below that the city is without authority to condemn in fee the property with which we are here concerned because it is already appropriated and used for an existing and important public service. This contention was overruled and the right of the city to condemn the land was sustained. The inquisition returned by the jury awarded the railroad companies $22,000 as damages. They have appealed in order to have reviewed the rulings below upon their motion and prayer disputing the right of the city to condemn their property.
It is a firmly settled principle of the law of eminent domain that when land has once become lawfully appropriated to a public use it can not be thereafter condemned for an inconsistent user unless authority for such later appropriation has been conferred expressly or by necessary implication. Boston Albany R. Co. v. Cambridge, 166 Mass. 224; In re Newport Ave. in City of NewYork, 218 N.Y. 274; Suburban Rapid Transit Co. v. Mayor,etc., of New York, 128 N.Y. 510; In re Buffalo, 68 N.Y. 167;East Hartford Fire Dist. v. Glastonbury Power Co.,92 Conn. 217; Pittsburgh, Ft. W. C.R. Co. v. Sanitary District,218 Ill. 286; B. O. C.R. Co. v. North, 103 Ind. 486; Town ofAlvord v. Great Northern Ry. Co. (Iowa), 161 N.W. 467; 2Lewis on Eminent Domain, 3 Ed., Sec. 240; 10 Ruling Case Law,
169; Case Note, 2 L.R.A. (N.S.) 227; Mills on Eminent Domain,
Sec. 46.
It is not disputed by the city that in order to maintain this proceeding it must be able to show a clear grant of power to it by the Legislature to condemn land which is impressed with a public use, but it contends that such power has been effectually granted. In support of this position, reference is first made to the general provisions of the City Charter, that *Page 661 
the Mayor and City Council shall have full power and authority to "acquire by purchase or condemnation any land or any interest therein which it may require for schoolhouses, engine houses, courthouses, markets, streets, bridges and their approaches, the establishment or enlargement of parks, squares, gardens or other public places, * * * or which it may require for any other public or municipal purpose" (Sec. 6, Sub-Sec. 4), and to "provide for laying out, opening, extending, widening, straightening or closing up, in whole or in part, any street, square, lane or alley within the bounds of said city which in its opinion the public welfare or convenience may require," and to "acquire the fee simple interest in any land for the purpose of opening, extending, widening or straightening in whole or in part, any street, square, lane or alley in Baltimore City" (Sec. 6. Sub-Sec. 26), and that whenever the city "shall condemn any land for a street, square, lane, alley, bridge or its approaches, or reservoir, or for an esplanade, boulevard, parkway, park grounds or public reservation * *, in all such cases the absolute and unqualified fee simple title to such land, or when the proceeding is in personam, all the right, title and interest of the owner or owners who are made parties to the proceeding, if they should not be the owners of the entire fee simple title, shall be condemned and acquired * * *." (Sec. 6-A.)
These general authorizations to appropriate land for the public needs and uses of the municipality do not express or imply an intention on the part of the Legislature to delegate to the city power to condemn in fee property already subject to a public use which the State itself has sanctioned.
The Court of Appeals of New York, in the case reported as Inre Newport Ave. in City of New York, supra, has said: "The rule is settled that a general grant of power to condemn land does not extend to land which has been devoted to a public use. * * * To reach such land, the grant must be specific." In Boston AlbanyR. Co. v. Cambridge, supra, the Supreme Judicial Court of Massachusetts held that the general words of a statute conferring power to "take and *Page 662 
hold by purchase or otherwise any and all such real estate and lands within said city as it may deem advisable," and to "lay out, maintain and improve the same as a public park or parks," were not intended to authorize the condemnation in fee, for park purposes, of "lands already devoted to public use as parts of the actual location of a railroad."
It is said in 2 Lewis on Eminent Domain, 3rd Ed., Sec. 417: "A general authority to lay out highways and streets is sufficient to authorize a layout across the right of way of a railroad; * * * but under a general authority to lay out highways a part of the right of way of a railroad can not be taken longitudinally, nor can the way be laid through a depot building and grounds, switch yards, and the like, which are devoted to special uses in connection with the road and necessary to its operation, and in constant use in connection therewith, which would be materially impaired or destroyed by the taking."
An instance of clearly conferred authority to condemn property already applied to a public use is to be found in Matter ofMayor, etc., of New York, 135 N.Y. 253. In that case it was held that a legislative grant of power to the City of New York to acquire all wharf property in the city entitled it to appropriate property of that description owned and used by a railroad or other public service company. Likewise in the case ofPittsburgh, Ft. W. C.R. Co. v. Sanitary District, supra, an authorization to widen, deepen and improve any navigable waterway, and to acquire by purchase or condemnation any real property required for such objects was held to confer the right to condemn a strip of land used for railroad purposes along the Chicago River. In the first of the two cases just cited the property condemned was within the class of property to which the statute specifically referred, and in the second case the power to condemn land for the purpose of widening and improving the Chicago River necessarily involved the right to appropriate ground adjacent to the river, whatever might be the uses to which it was previously devoted. *Page 663 
In conferring upon the City of Baltimore the general power to condemn property for public uses, the Legislature has employed no descriptive or other terms indicating that land which is subject and essential to an existing and authorized public use was intended to be made available for exclusive appropriation by the municipality. The question which we are now deciding is not concerned with the power of the city to project and maintain a street across railroad property under conditions which will not prevent its continued use for railroad purposes, but we are dealing with a condemnation in fee by which the railroad companies will be wholly deprived of the use of property proven to be necessary for the performance of the public service for which they were incorporated. No evidence of a legislative purpose to authorize the city to make such an appropriation is to be found in the charter provisions to which we have referred.
There are certain sections of the City Charter in addition to those already noted which have been cited in support of the present proceeding. These relate to the improvement of Jones' Falls and to the construction of a public highway along and over the bed of that stream, to be known as the Fallsway, Sec. 6, Sub-Sec. 13, and Sec. 826P. It appears from the proof in the case that in the vicinity of the ground sought to be condemned the bed of Jones' Falls is covered by the completed Fallsway, the stream passing beneath through large conduits. The pending condemnation can not properly be referred to the power, which the sections last cited confer, to widen, deepen and otherwise improve Jones' Falls, and to "construct on the sides and adjacent to said stream, streets, avenues and wharves," because such a theory is precluded by the conditions resulting from the building of the Fallsway and the conversion of the Falls into an underground sewer. The proceeding is not supported by the power to "open, construct and establish" the Fallsway, because that purpose has already been accomplished.
As we are unable to find any delegation of the power of eminent domain to the city that includes, by express grant *Page 664 
or by clear implication, the right to condemn the land described in this proceeding, in view of its prior and necessary use for such a public service as that in which the appellant railroad companies are engaged, we are of the opinion that the objection urged against the condemnation on that ground should have been sustained by the granting of the motion to quash or of the prayer offered on behalf of the companies instructing the jury, in effect, that the city was without authority to condemn the property for its exclusive use, the evidence in the case being treated by agreement as applicable both to the motion and to the prayer.
This conclusion renders unnecessary the discussion and decision of other questions raised by the record.
The preparation of the opinion in this case has been delayed by the illness of the Judge to whom it was first assigned.
Rulings reversed, with costs, and case remanded. *Page 665