TOWN COMMISSIONERS OF CENTREVILLE *v.*
COUNTY COMMISSIONERS OF QUEEN
ANNE'S COUNTY

[No. 144, October Term, 1951.]

*Decided April 4, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Clayton C. Carter* and *Richard T. Earle* for appellant.

*John Palmer Smith* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This injunction suit was brought by the County Commissioners of Queen Anne's County, a body politic, to

prohibit the Town Commissioners of Centreville, a municipal corporation, from installing parking meters on the sidewalks of three of the streets around Court House Square in Centreville.

The county's second amended bill of complaint alleged: (1) that the Justices of the Levy Court of Queen Anne's County were authorized by Chapter 25 of the Laws of 1789 to acquire approximately two acres of land in what is now Centreville on which to build a courthouse and to pay for it from the funds arising from the sale of the courthouse property at Queenstown; that the tract was laid off and stones were planted to mark its four corners; that the present boundaries of Court House Square include Commerce Street on the east, Liberty Street on the west, Broadway on the north, and Lawyers' Row on the south; that, although there is no deed or condemnation proceeding on record to show the county's title, the county owns this tract in fee simple, having held possession of it more than 20 years immediately preceding the institution of suit; (2) that several years before the institution of suit the town of Centreville installed parking meters on the east side (the front) of the square without any objection from the county; (3) that on July 5, 1950, the town, against the county's protests, proceeded to erect parking meter posts in the cement pavement on the west side of the square and in the grass plot on the south side, and threatened to erect others on the north side; (4) that while the town has an easement in the streets, it has no easement in the sidewalks, and therefore the erection of the posts is a trespass on the county's property and an unlawful exercise of power.

This appeal is from a decree ordering the town to remove all posts from the sidewalks on the west and south sides of the square, and enjoining it from erecting any posts or installing any parking meters on the west, south and north sides.

The law of Maryland provides that the county commissioners of each county in the State shall have charge

of and control over the property owned by the county and over county roads and bridges. Code 1939, art. 25, sec. 1. On the other hand, the charter of the town of Centreville gives to the Town Commissioners "the exclusive charge and control of the roads, streets and bridges within the limits of said town of Centreville, and the construction and repair of the same, * * *". Laws 1914, ch. 41, Code P. L. L. 1930, art. 18, sec. 112. In 1949 the Legislature, in an amendment to the charter, empowered the Town Commissioners to regulate the use of streets and public ways and to make "reasonable charges for parking within areas set aside exclusively for that purpose." Laws 1949, ch. 575. The Maryland Motor Vehicle Act expressly declares that its provisions shall not prevent local authorities from regulating the standing or parking of vehicles with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power. Laws 1943, ch. 1007, Code Supp. 1947, art. 66½, sec. 135.

The decisive question in this case is not whether the town of Centreville acquired the fee simple title to the sidewalks in question, but whether they are public ways over which the town has the right to exercise control. Counties are created for the purpose of carrying out the policy of the State for the administration of matters of political government, including taxation, education, improvement of roads, and care of the poor, and for the administration of justice. The powers and functions of the county, as distinguished from municipal corporations, have a direct reference to the general, rather than the local, policy of the government of the State. Municipal corporations are created principally for the advantage and convenience of the people of the locality. The powers of the counties under the general law of the State do not include the police power. The police power is delegated to the municipal corporations. The counties must comply with reasonable police regulations in the interest of the general welfare. *Cook County*

*v. City of Chicago,* 311 Ill. 234, 142 N. E. 512, 516, 31 A. L. R. 442.

This is not a case of dedication of private property for public use. The land was dedicated to public use more than a century and a half ago. It is still dedicated to public use. Only the kind of public use has been changed. It is held in this State that title to land dedicated to public use cannot be acquired by private individuals by prescription. *Cushwa v. Williamsport,* 117 Md. 306, 83 A. 389; *Brady v. City of Baltimore,* 130 Md. 506, 513, 101 A. 142. However, a county may by abandonment relinquish its control over land conveyed to it, especially where it continues to be for the use and benefit of the public. *McLennan County v. Taylor,* Tex. Civ. App., 96 S. W. 2d 997, 1000; *Borough of Milford v. Burnett,* 288 Pa. 434, 136 A. 669; *City of Savannah v. Barnes,* 148 Ga. 317, 96 S. E. 625, 9 A. L. R. 419; 26 C. J. S., Dedication, sec. 62.

The county conceded that the town has acquired an easement in the streets surrounding the square. We see no logical reason to make a distinction in this respect between a street and a sidewalk. Generically the term "street" includes sidewalks. *Wehr v. Roland Park Co.,* 143 Md. 384, 396, 122 A. 363. While a sidewalk is appropriated to the use of pedestrians, it is open to all persons desiring to use it and the difference in the manner of use does not render the sidewalk any less a public highway than the rest of the street. *Chicago v. O'Brien,* 111 Ill. 532, 53 Am. Rep. 640; *Chicago R. I. & P. Ry. Co. v. Redding,* 124 Ark. 368, 187 S. W. 651. In any event, parking meters are only a means of regulating traffic in the street. The county admitted that it surrendered long ago to the town the maintenance of the streets and the regulation of traffic.

Centreville is not the only county seat in the United States where installation of parking meters has aroused the protest of county authorities. A similar controversy arose between Audrain County, Missouri, and its county seat, Mexico. The plat of the city, which was filed in

1836, provided for blocks and streets and reserved one block for the Public Square. The block was conveyed to the county in consideration of the location of the county seat in that city, and the courthouse was erected upon it. In 1899 the city established the width of the streets around the square at 50 feet, but subsequently increased the width. The sidewalks around the square were laid in 1937, the county paying a portion of the cost. In 1945 the city passed an ordinance authorizing the installation of parking meters on the sidewalks. The county showed that the sidewalks and streets encroached on its land, and contended that, although it had permitted the city to regulate traffic and parking around the square, the city could not extend its privilege by charging for parking without the county's consent. The Supreme Court of Missouri, however, said: "The law of the road extends to all public highways, de jure or de facto, embracing ways on private property if used for public travel. The necessity for regulation inherent in the use permitted gives rise to and makes the police power applicable to private land when used as a de facto public highway. * * * Counties have not been delegated authority to regulate traffic over city streets within their boundaries. We are cited to no authority, and our search has revealed none under the instant facts, taking land devoted to public use as a city street out of the police power delegated to cities because owned by a county." *State ex rel. Audrain County v. City of Mexico*, 1946, 355 Mo. 612, 197 S. W. 2d 301, 304.

Another contest arose between Graves County, Kentucky, and its county seat, Mayfield. That county acquired a tract of land for the Court House Square in 1824. The courthouse was built thereon and an iron fence was erected on the boundary lines. Some years afterwards a new fence was erected back of the original fence line, and the land outside the fence was used for sidewalks on all four sides. In 1909 the fence was removed and a concrete curb was built on the fence line. The sidewalks were paved at the county's expense. The county,

in its protest against parking meters around the square, contended that, since the tract had been acquired for public use by the county, the county had no right to rededicate it as a public way. In rejecting that contention, the Court of Appeals of Kentucky said: "We cannot agree, as the rededication, if any, is entirely consistent with the general public purposes for which the court house square was originally conveyed to the County. * * * This is public property, and the benefit to the public is the paramount consideration. Obviously the present and past use of the property as a passway is highly beneficial to the public, and we conclude that this particular use is not contrary to the purposes of the original grant." *Graves County v. City of Mayfield*, 1947, 305 Ky. 374, 204 S. W. 2d 369, 371.

In this case Queen Anne's County is seeking to thwart the exercise of a high governmental prerogative, the police power of the State, which is exercised by the municipal corporation of Centreville as the agent of the State. This it cannot do, as the sidewalks have been used as public ways for more than 25 years with the county's consent. During that time the county has never attempted to place any limitation upon their use. Many years ago the iron fence around the courthouse was removed. The present sidewalk is inside the fence line. But according to the town clerk, the town put up parking signs around the square at least ten years ago, and the county never objected to them. Nor did the county ever object to the parking meters on the sidewalk on the east side of the square. There can be no logical conclusion other than that the county offered the sidewalks for the use of the public and the town's exercise of control over them established their acceptance for the purpose.

*Decree reversed and bill dismissed, with costs,*

MARBURY, C. J., delivered the following dissenting opinion, in which COLLINS, J., concurred.

The County Commissioners of Queen Anne's County sought and obtained from the Circuit Court of that county a decree directing the municipal corporation known as the Town Commissioners of Centreville to remove from within the boundaries of the Court House Square on the south and west sides thereof all parking meters, parking meter posts and cement emplacements therefor, and enjoining the municipal corporation from entering into or upon the Square for the purpose of placing any parking meters, posts or emplacements on its south, west or northern sides. The Town Commissioners appeal here.

The Court House Square is the location of the courthouse of Queen Anne's County. It is wholly within the limits of the town of Centreville, the county seat of Queen Anne's County, and wholly within the municipal limits of the appellant corporation. The latter has admitted power to regulate parking on the streets of the town, and has admitted authority over the streets around the Square. The question here is whether, in the exercise of such authority, it can place parking meters within the boundaries of the Square.

By successive acts up to 1789 (Chapter IV of 1782, April Session, Chapter XVI of 1784, Chapter XVIX of 1788, Chapter XXV of 1789), the General Assembly authorized commissioners to acquire from funds arising from the sale of the old county-owned court house and gaol in Queenstown a site of approximately two acres from one Elizabeth Nicholson, and to build thereon a new court house and gaol at Centreville, the land thus acquired to be vested in the Justices of Queen Anne's County and their successors and held by them forever as public land for the purpose aforesaid and for other purposes for the use of the county.

There is said to be no deed or condemnation proceeding of record, but the four corners of the Square were shortly marked by stones designated P. G. 1, 2, 3, and 4, as

required in the statutes, and the present Court House is now within these boundaries, although the limits of the original Square have been narrowed. However, the present Square, as now bounded by cement curbs, has been in the actual and continued occupation of the County Commissioners and their predecessors in office for over 150 years without interruption. It is, of course, a matter of historical information that the Justices of the counties were the predecessors as to fiscal matters of the present County Commissioners in the several counties of the State, and the latter succeeded to their powers and duties. *Schneider v. Lansdale,* 191 Md. 317, 324-325, 61 A. 2d 671. It seems idle, therefore, for the Town to contend that the present appellees have no legal right to the Square, because of the absence of a deed or of a condemnation proceeding on the record. It is County property over which they have control. Code Art. 25, Sec. 1.

There was formerly an iron fence surrounding the present Square, but this was removed, and the present cement curbs take its place. Within the Square are cement walks, built and maintained by the County Commissioners, on two sides adjoining the curb and on a third side separated from the curb by a grass plot, also maintained by the County. These walks connect with a walk leading directly to the Court House door, and furnish a convenient method for those having business in the Court House to reach their destination from any side of the Square where they may be. While these walks are also used generally by persons who have no business in the Court House, but are merely going from one side of the Square to the other, their primary purpose and object was undoubtedly to serve those who had to visit the Circuit Court, or the various county offices located in the Court House. The streets outside the curb are partly or wholly located on the original Square, but it is admitted by the County Commissioners, as heretofore stated, that these streets are under the control of the town authorities, and that the latter can regulate park-

ing upon them. The County Commissioners, however, admit no dedication of the sidewalks, as distinguished from the streets, and claim them as their own property, free from any public easement.

Dedication is a matter of intention, and, under all the authorities, both in this State and elsewhere, permission for use for a special purpose, such as giving the public access to the owner's business property, does not operate as a dedication to public use generally. *Tiffany, Real Property,* 3rd Ed., Vol. 4, Sec. 1102, p. 341; *McQuillin, Municipal Corporations* (Rev.), Vol. 4, Sec. 1689, p. 745; *Irwin v. Dixion,* 9 How. 10, 32, 13 L. Ed. 25; *Mayor and C. C. of Baltimore v. Fear,* 82 Md. 246, 256-257, 33 A. 637; *Association of Ind. Taxi Op. v. Yellow Cab Co.,* 198 Md. 181, 191-192, 82 A. 2d 106, 110-111. Since that is so, it seems clear that there has been no dedication of these sidewalks within the Square, and that the municipal authorities have no control over them.

If a private person owns property adjacent to a public highway or street, the authorities in charge of such highway or street have no right to trespass upon such property without permission, and to place upon it parking meters, poles or other objects. Control over streets gives no right to use adjoining private property. Ordinary sidewalks in a town or city are part of the streets, and meters and signs can undoubtedly be placed upon them in the exercise of control over traffic on adjacent streets, but here is presented a case, not of ordinary sidewalks along a street, but of walks, built for a special purpose, not made a part of the streets, and not dedicated, as the streets have been, for general public travel. Permissive use does not constitute dedication under such circumstances as are shown to exist in this case.

The discussion to this point has proceeded on the supposition that the County Commissioners are in the same situation as a private owner, but, as a matter of fact, their situation is entirely different. While they have control of the Court House property, and have the duty

to keep it in repair, to keep it insured, and to keep it free of trespassers (*Prince George's Co. v. Mitchell,* 97 Md. 330, 339, 55 A. 673), they have no authority to sell it or to dispose of it in any way without specific instructions from the Legislature. The town authorities cannot condemn a road or a walk through the Court House grounds, without specific instructions from the Legislature which do not appear. *N. C. Rwy. Co. v. M. & C. C. of Baltimore,* 133 Md. 658, 660, 106 A. 159. *Browne v. Baltimore,* 163 Md. 212, 218. *United States v. Certain Parcels of Land,* 30 Fed. Supp. 372, 377-379, 161 A. 24. Note 37 L. R. A. (N. S.) 101. They cannot acquire it by prescription against the County. *Ulman v. Charles St. Ave. Co.,* 83 Md. 130, 145, 34 A. 366. *Cushwa v. Williamsport,* 117 Md. 306, 319, 83 A. 389. *Brady v. Mayor & C. C. of Baltimore,* 130 Md. 506, 513, 101 A. 142. *Sachs v. Ward,* 182 Md. 385, 394, 35 A. 2d 161. Therefore, they have no power to get it, and the County has no power to give it to them.

It seems clearly to follow from all these considerations, that the town has no right to place its meters, posts and stands on the county property, and that the decree should be affirmed.

Judge Collins joins me in this opinion.