St. Louis & San Francisco Railroad Company *v.* Fayetteville.

Opinion delivered May 27, 1905.

1. Municipal corporation—power to condemn crossing over railroad track.—The statute giving cities authority to lay off and establish streets within the corporate limits impliedly gives them the right to

cross the tracks of railroads when it is necessary to do so for the purpose of connecting the two ends of a street. (Page 537.)

2. NEW TRIAL—EFFECT OF ORDER GRANTING.—Where an order granting a new trial was in general terms, without exceptions or reservations, it will be held to have set aside the special findings of the jury as well as their general verdict. (Page 537.)

3. CONDEMNATION OF CROSSING—DAMAGES.—In a suit by a municipal corporation to condemn a street crossing over the right of way of a railroad company, the fact that the Legislature may subsequently compel defendant company without compensation to construct and keep in repair either an overhead or a grade crossing, as the circumstances may require, cannot be considered as an element of damages. (Page 538.)

4. INSTRUCTIONS—WAIVER OF OBJECTIONS.—Failure to except to instructions given and to bring the exceptions forward in a motion for new trial is a waiver of any objection to such instructions. (Page 539.)

5. CONDEMNATION OF STREET CROSSING—EFFECT.—In a suit merely to condemn a street crossing over the right of way of a railroad company it was improper to order the railroad company to construct the crossing. (Page 540.)

Appeal from Washington Circuit Court.

JOHN N. TILLMAN, Judge.

Affirmed with modification.

*L. F. Parker* and *B. R. Davidson,* for appellant.

A city has no right to condemn a right of way across a railroad track. Sandels & Hill's Dig. § § 2737, 2747, 2749. Such authority must be given expressly or by clear implication, Lewis, Em. Dom. § § 240, 267, 276; Elliott, Roads & Streets, § 219; Dill. Mun. Corp. § 588. Such power is not contained in our statute. 14 Am. & Eng. R. Cas. 34; 10 Fed. 497; 53 Fed. 687; 103 N. Y. 10; Elliott, Roads & Streets, § 779; 37 N. J. L. 77. There was no necessity shown by the proof for the crossing. 56 Mich. 244; Elliott, Roads & Streets, § 330; 43 N. Y. 137; 30 Am. & Eng. R. Cas. 294; 93 Pa. St. 150; 66 N. Y. 407. The street had never been dedicated to public use, and had never become a public highway. 58 Fed. 751; Sand. & H. Dig. § 5209; Lewis, Em. Dom. 308; 77 Ia. 69; 17 Ark. 442; 47 N. E. 191. Ordinance No. 113, was of no effect until published. McQuil. Mun.

Corp. § 34; 89 Ill. 195. Plaintiff was unable to obtain consent of defendant to extend the street across the railroad. 2 Dill, Mun. Corp. 605*n;* Elliott, Railroads, § 1119, Mills, Em. Dom. 105, 107; 19 N. E. 440; 36 Am. & Eng. R. Cas. 234; 28 *Id.* 272; 77 N. Y. 557; 14 S. W. 177; Lewis, Em. Dom. 357. The cause should have been transferred to the equity docket. 51 Ark. 235; 43 Ark. 111; 44 Ark. 258; 50 Ark. 269; 68 Ark. 134; 147 U. S. 258; 38 N. E. 167; 10 Fed. 497; 28 Am. & Eng. R. Cas. 266; Lewis, Em. Dom. 304. The opinion of C. R. Gray as to damages should have been permitted. 44 Ark. 103; 51 Ark. 328; 39 Ark. 167; 2 Atl. 670.

*E. S. McDaniel,* for appellee.

A city has a right to lay off a street across a railroad track. 132 Ind. 558; 130 Ind. 224; 23 Oh. St. 510; Elliott, Roads & Streets, §§ 219-222. The question of necessity was not a judicial one. 3 Elliott, Railroads, § 1109; 161 Mass. 302; 34 Pac. 224; 111 Mo. 237; 124 N. C. 127; Elliott, Roads & Streets, §§ 190, 345; 11 S. W. 243. Want of publication of an ordinance is a matter of defense. Kirby's Dig. § 5471; 53 Ark. 368. The appellant, having failed to ask the court to pass upon the question as to whether appellee had been able to obtain the consent of appellant to cross its track, waived it. 17 W. Va. 812; 123 Mass. 301; Lewis, Em. Dom. § 388. The special finding was a part of the verdict, and the granting of a new trial set it aside. 16 Am. & Eng. Enc. Law, 674; 14 Enc. Pl. & Pr. 935. There was no ground upon which to transfer to equity. 29 N. E. 1109. Courts are reluctant to interfere by injunction with the acts of municipal officers. Elliott, Roads & Streets, § 394; Wells, Em. Dom. 646. The evidence of C. R. Gray was properly excluded. Lewis, Em. Dom. § 489; 121 Mass. 124; 105 Ill. 388. It was proper to require the railroad, at their own expense, to construct and maintain so much of the street crossing as falls within the boundaries of their own right of way. 3 Elliott, Railroads, § 1102; 140 Ill. 309; 91 Ind. 119; 43 Minn. 524; 29 Neb. 412; 87 Tenn. 712; 70 N. Y. 569; 78 Me. 61; 128 U. S. 174; Elliott, Roads & Streets, § 75; 79 Me. 363; 32 Am. & Eng. R. Cas. 271; 42 *Id.* 248; 58 Ark. 117.

*L. F. Parker* and *B. R. Davidson,* for appellant in reply.

There was no general verdict; there were two special findings, one of which was set aside, the other is *res judicata.* Kirby's Dig. § 6218; 53 Ark. 21; 14 Enc. Pl. & Pr. 937; 16 Am. & Eng. Enc. Law, 675. The crossing occasioned by the street was such an interference with the operation of the railroad as equity will enjoin. 3 Elliott, Railroads, § 1104; 91 N. Y. 552; 132 Ind. 558; 3 Elliott, Railroads, § § 1122-1125.

RIDDICK, J. This is a proceeding on the part of the city of Fayetteville to condemn a right of way for a street across the tracks and right of way of the St. Louis & San Francisco Railroad Company. The circuit court, in which the action was brought, gave judgment in favor of the city for the right of way, and assessed the damages to the company at $300. Both sides appealed, and the case has been ably argued before us by learned counsel for the city and the railroad company.

We shall briefly state our conclusions on the points involved.

In the first place, we are of the opinion that the statute giving the city authority to lay off and establish streets within the corporate limits impliedly gives it the right to cross the tracks of railroads when it is necessary to do so for the purpose of connecting the two ends of a street. Under a condemnation of a right to cross nothing will be acquired but a mere right of way for the street across the railroad, and the right of the company to use its property for railroad purposes will be impaired only to a very slight extent. A right so lightly affecting the franchise of the corporation may be inferred from the general power to lay off, condemn and establish streets. *New Jersey Southern R. Co.* v. *Long Branch Com'rs,* 39 N. J. Law (10 Vroom), 28.

There had been a previous trial of this case, and a verdict of the jury with special findings. The defendant moved for a new trial, but it excepted from its motion the finding of the jury that an overhead crossing was necessary. The plaintiff thereupon admitted that the verdict was contrary to the law and the evidence, and conceded that a new trial should be granted. The court then granted a new trial generally, without making any reservations as to the findings which had been excepted in

the motion of defendant. This, we think, had the effect to set aside all findings of the jury made at that trial. It is true that the court was not required to order a new trial on the whole case, but it had the power to do so. As it made no exceptions or reservation in the order for a new trial, we are of the opinion that the order for a new trial set aside the verdict and judgment entirely, and that the court properly held that the special findings of the jury that an overhead crossing was necessary were also set aside by this general order granting a new trial.

But, if we concede that an overhead crossing is necessary at this place, it would not, in our opinion, entitle the company to any increase in the amount of damages. For what the city is seeking now is to acquire for the public a right to cross the railway track and right of way of the company at the point named. If we concede that the Legislature has not impowered the city to compel the company to construct the crossing and keep it in repair as a police regulation, yet, as the Legislature can do this at any time, as it can compel the company without compensation to construct and keep in repair either an overhead or grade crossing, as the circumstances may require, it follows that those matters are not elements of damages in this case. *Chicago, B. & Q. Railroad Co.* v. *Chicago,* 166 U. S. 226. If, under the law as it now stands, the city cannot compel the railroad to construct the crossing, then it must either construct the crossing itself, or offer the company such a sum as will induce it to construct it. But, before the city can acquire the right to construct the crossing, it must condemn the right of way for the street across the roadbed and right of way of the company, and that is what it is seeking to do in this case. The prayer of the complaint is that "a strip of ground forty feet wide over and across defendant's right of way and railroad track * * * be condemned for a public street grade crossing; that a jury be impaneled to inquire into and assess the defendant's damages, and that, upon payment of the damages so assessed, plaintiff be authorized to use and maintain such street over and across the defendant's track and right of way."

It will be noticed from this complaint that plaintiff is not seeking to compel the railroad to construct the crossing, but

only to condemn a crossing and to assess damages for the crossing.

In the case of Chicago, B. & Q. R. Co. v. Chicago, 166 U. S. 226, 255, the Supreme Court of the United States, after quoting decisions to the effect that no damages could be claimed, either by a natural person or corporation, on account of being compelled to render obedience to a police regulation designed to secure the common welfare, said: "We concur in these views. The expenses that will be incurred by the railroad company in erecting gates, planking the crossing, and maintaining flagmen, in order that its road may be safely operated—if all that should be required—necessarily result from the maintenance of a public highway, under legislative sanction, and must be deemed to have been taken by the company into account when it accepted the privileges and franchise granted by the State. Such expenses must be regarded as incidental to the exercise of the police powers of the State. What was obtained, and all that was obtained, by the condemnation proceedings for the public was the right to open a street across land within the crossing that was used, and was always likely to be used for railroad tracks. While the city was bound to make compensation for that which was actually taken, it cannot be required to compensate the defendant for obeying lawful regulations enacted for the safety of the lives and the property of the people.'

A consideration of the opinion in the above case convinces us that the instructions of the court in this case were quite as favorable to the defendant as the law would permit, and that the damages assessed were fully as much as the evidence would sustain. In fact, there is some force in the argument made by counsel for the city on the cross appeal that these damages are too large. But the city did not make any objections or save any exceptions to the instructions given on the trial, and did not file any motion for a new trial, so, if any error was committed against the city, it was waived, and cannot be considered. The cross appeal therefore brings nothing before us for decision.

There is nothing in our statute that requires that the city should first attempt to secure a crossing by agreement with the company. Besides, the wide difference between the city and

the company as to the amount that should be paid for this crossing shows clearly that no agreement between them was possible.

So far as the necessity for the crossing is concerned, that has been determined by the city, and is further shown by the fact that the two ends of the street are severed by the railroad, and that a crossing is necessary to connect them.

The question of whether, upon payment of the damages assessed by the jury, the city will have the right to require the railway company to construct the crossing and keep it in repair does not properly arise in this case, which is only a proceeding to condemn a street crossing and to assess the damages to the company for such crossing, but this court decided in a recent case that the city had such right under statutes of 1899. *Gravette v. Ark. & Okla. R. Co.*, 74 Ark. 194. If the question turned on the act of 1905, there might be doubt about it, for that act seems to apply to streets established after the passage of the act. But this question will arise only when the company is ordered by the city to construct the crossing and refuses to do so. We do not think the circuit court should have ordered the company to construct the crossing, for that is a matter for the city authorities to look after, and no such relief was asked in this case.

There are other questions discussed, but, after consideration thereof, we see nothing to require a reversal of the judgment of the circuit court. But it will be modified so as to make an order in reference to the construction of the crossing, as no such relief was asked. In other respects it is affirmed.