AUGUST E. HOLMBERG, APPELLEE, V. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, APPELLANT.

FILED JULY 1, 1927.   No. 24917.

1. STATE RAILWAY COMMISSION: POWERS. The Nebraska state railway commission is free and vested with full power, in the absence of statutory or constitutional inhibition, to adopt and follow its own rules and course of procedure.

2. ——: MODIFICATION OF FORMER ORDER. In proceedings before such commission which involve either directly or as a necessary consequence the annulment, modification or alteration of a previous order by it entered, the doctrine of estoppel or *res judicata,* as usually applied to judgments of courts of record, is without any application whatever.

3. Police Power. "The essential quality of the police power as a governmental agency is that it imposes upon persons and prop-

erty burdens designed to promote the safety and welfare of the public at large." *Lindemann v. St. Joseph & G. I. R. Co.,* 113 Neb. 284.

4.  **Railroads:** CONSTRUCTION OF FARM CROSSINGS. It appearing that the provision of section 106, ch. 25, Revised Statutes 1866, was in force at the time the defendant secured its right of way by condemmnation proceedings, it follows the defendant company is bound to construct and maintain farm crossings, as defined therein, or as said section may be amended by the state in proper exercise of its police power.

5.  **Constitutional Law.** Section 5527, Comp. St. 1922, as amended by chapter 167, Laws 1923, construed, and *held* to be valid and enforceable, and not to contravene sections 3, 16, or 21, of art. I, Constitution of Nebraska; and that said section, as amended, does not deprive said plaintiff of its property without due process of law, or impair the obligations of contract; that it does not take property for private use in violation of the state Constitution, nor does it deprive plaintiff of its property without due process of law in violation of the federal Constitution.

6.  **Railroads:** CONSTRUCTION OF SUBWAY: SUFFICIENCY OF EVIDENCE. Evidence examined, and *held* to support the order of the railway commission requiring the construction of an underground cattle pass provided in the order entered by it herein.

APPEAL from the State Railway Commission. *Affirmed.*

*Wymer Dressler, Robert D. Neely* and *Paul S. Topping,* for appellant.

*O. S. Spillman, Attorney General, Hugh LaMaster* and *Peterson & Barta, contra.*

Heard before GOSS, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

EBERLY, J.

August E. Holmberg, hereinafter referred to as plaintiff, owns and resides upon a quarter-section farm situated near Wausa, Nebraska. This farm is bisected by the right of way of the Chicago, St. Paul, Minneapolis & Omaha Railway Company, hereinafter referred to as defendant. Situated north of defendant's right of way is a depression or low, wet valley which in a general way parallels the right

of way and is useful for pasturage only. It contains some eighteen acres of land and extends across the farm. A branch of this valley extends to the southward intersecting the defendant's line of railway about the center of the farm. At this point of intersection the grade of defendant's road-bed, as shown by the evidence, is approximately nine feet in height. In the present proceeding the plaintiff seeks, under the provisions of section 5527, Comp. St. 1922, as amended by chapter 167, Laws 1923, to compel the construction of an underground cattle pass of sufficient size for the passage of horses, cattle and hogs under the track of the defendant connecting the two halves of his farm. Heretofore there has been an ordinary surface or grade farm crossing maintained by the defendant on the northern part of the farm, but the findings of the commission, which are supported by the evidence, disclose that in its present location this crossing does not answer to the requirements of the farm, and is inadequate for the purpose for which it is constructed and has not been used ordinarily by the plaintiff because in its location it was impracticable. The record before us also discloses that in 1922 the plaintiff filed a petition before the state railway commission for an order requiring the defendant to construct an underground crossing through the right of way on this farm at the point above described, which was by the commission denied, and that no appeal was prosecuted from such denial. On September 16, 1924, the present proceeding was commenced before the Nebraska state railway commission. After hearing thereon, an order was entered requiring the defendant to construct an "underground cattle pass of sufficient size for the passage of horses, cattle and hogs," etc., and from this order the defendant has appealed.

The first assignment of error at the threshold of this case is that the railway commission erred in refusing to take notice of, or receive in evidence, the record of the former hearing of 1922. This record, duly authenticated, was offered in evidence by the defendant at the present hearing. The commission refused to admit it in evidence,

but the offer of proof embraces the complete record of proceeding referred to, and the transcript of same forms a part of the bill of exceptions in the present case. It was conceded on argument of the present case by the representatives of the commission who appeared in its behalf that the record offered should have been received in evidence. Without further consideration, for the purpose of this case only, we accept this view of the law. The record of the case, determined in 1922, will therefore be considered as before the court, and entitled to the same consideration as though formally received and considered by the commission at the time the order appealed from was made. It therefore follows that, assuming error to have been committed by the ruling complained of, it cannot be considered as prejudicial in this case.

In considering the previous determination of the Nebraska state railway commission of the matter now before us, when first presented to that commission by the same parties, it is to be remembered that this commission finds the source of its power in the Constitution. The limitations of its powers, and the proper manner of their exercise, must be determined by the terms of that instrument, and also, as expressed therein, "as the legislature may provide by law." In the exercise of its prerogatives the Nebraska state railway commission is not subject to direction or criticism by the courts, except as what transpires may be a proper subject of judicial review, as bearing upon its orders or "judgments." Also, the commission is free, in the absence of statutory or constitutional inhibition, to adopt and pursue its own rules and course of procedure. *Omaha & C. B. Street R. Co. v. Nebraska State Railway Commission,* 103 Neb. 695.

So, too, this court is committed to the doctrine that— "The state railway commission has independent legislative, judicial and executive or administrative powers so far as necessarily involved in the 'regulation of rates, service, and general control of common carriers;' and such exercise of

power may be controlled or limited by the legislature." *In re Lincoln Traction Co.,* 103 Neb. 229.

But the legal effect of orders entered in exercise of its judicial power has been "expressly controlled and limited by legislative action." By statute it is expressly provided that orders of the commission made upon hearing, such as is now before us, shall be "in force and effect from and after the date fixed by the commission, and shall so remain until annulled, modified, or reversed by the commission," etc. This language, in connection with the context and other provisions of the act, sustains the conclusion that in proceedings which involve either directly or as a necessary consequence the annulment, modification or alteration of a previous order entered by the commission, the doctrine of estoppel or *res judicata,* as usually applied to judicial decisions of courts of record, has no application whatever. The analogy between the control of orders by a court during the term in which they were entered, and the control by the commission of its orders at all times, would seem to be complete.

From what has already been set forth, it also follows that whether such proceedings to reverse, modify, or annul shall take the form of an application to reopen the original proceeding in which the order complained of was entered, or whether they shall take the form of an independent proceeding and formally wholly unconnected with the previous proceeding, is a matter of procedure strictly within the constitutional control and determination of the commission. The conclusions here announced seem to be in accord with the weight of authority. Comp. St. 1922, secs. 5496-5498, 5527; Laws 1923, ch. 167; *Lindemann v. St. Joseph & G. I. R. Co.,* 113 Neb. 284; *Board of R. R. Commissioners v. Atchison, T. & S. F. R. Co.,* 8 I. C. C. Rep. 304; *Cattle Raisers Ass'n v. Chicago, B. & Q. R. Co.,* 12 I. C. C. Rep. 507; *Goss v. Director General,* 73 I. C. C. Rep. 649; *Bell & Zoller Coal Co. v. Baltimore & O. S. W. R. Co.,* 74 I. C. C. Rep. 433; *Motor Transit Co. v. Railroad Commission,* 189 Cal. 573;

*Stratton v. Railroad Commission,* 186 Cal. 119; 2 Freeman, Judgments (5th ed.) secs. 712, 713.

It is the defendant's further contention that, the right of way having been condemned and paid for, the legislature is "without power thereafter to compel the railroad to expend substantial sums of money for the convenience of such landowner or his grantee." It would seem that the question suggested is not fully presented by the record in this case. It is, however, stated by the defendant in its brief that its right of way was obtained by the usual condemnation proceedings. This is tacitly conceded by plaintiff's failure to deny either in oral argument or written brief. If we take judicial notice of this fact, possibly it will not be disputed that this right of way was obtained prior to 1921 at a time when the following statute was in full force: "When any person owns land on both sides of any railroad, the corporation owning such railroad shall, when required so to do, make and keep in good repair one causeway or other adequate means of crossing the same." Rev. St. 1866, ch. 25, sec. 106.

Accepting the above assumptions as in accord with the facts in the instant case, then the damages for the land condemned were assessed in view of the provisions quoted, and the amount of recovery was necessarily diminished because of the terms of this statute. It follows that the railroad company is bound to construct and maintain a "farm crossing" defined by statute which, in terms at least, does not purport to describe a "grade crossing" nor preclude a further definition of "adequate means of crossing the same" by the state in proper exercise of its police power. *Lindemann v. St. Joseph & G. I. R. Co., supra,* would appear opposed to defendant's contention and controlling on this branch of the case.

However, the question under consideration naturally leads to and suggests the further contention made by the defendant that section 5527, Comp. St. 1922, as amended by chapter 167, Laws 1923, is unconstitutional and void, being in violation of sections 3, 16, and 21, art. I, Constitu-

tion of Nebraska, and being in violation of the Fourteenth amendment to the Constitution of the United States; that is, it deprives plaintiff of its property without due process of law; it impairs the obligations of contract; it takes private property for private use in violation of the state Constitution; and it deprives plaintiff of its property without due process of law in violation of the federal Constitution.

The application of the principles of constitutional law upon which the defendant bases its contention to the facts in this case discloses that the fundamental question involved here is the right of the state, by the exercise of its police power, to eliminate the perils of grade crossings. The principles themselves are well established. As applied in the precedents found in the court of controlling jurisdiction, it would seem that the validity of the statutes attacked must be sustained. Mr. Justice Hughes, in delivering the opinion of the supreme court of the United States in *Chicago, M. & St. P. R. Co. v. City of Minneapolis*, 232 U. S. 430, said: "It is well settled that railroad corporations may be required, at their own expense, not only to abolish existing grade crossings, but also to build and maintain suitable bridges or viaducts to carry highways, newly laid out, over their tracks, or to carry their tracks over such highways." Other specific illustrations of the application of this established rule to the elimination of grade crossings are *Davis v. County Commissioners*, 153 Mass. 218; *New York & N. E. R. Co. v. Bristol*, 151 U. S. 556; *Selectmen of Norwood v. New York & N. E. R. Co*, 161 Mass. 259; *Illinois C. R. Co. v. Copiah County*, 81 Miss. 685; *City of Harriman v. Southern R. Co.*, 111 Tenn. 538; *St. Louis & S. F. R. Co. v. Fayetteville*, 75 Ark 534; *Chicago, B. & Q. R. Co. v. People*, 200 U. S. 561; *Cincinnati, I. & W. R. Co. v. Connersville*, 218 U. S. 336; *Missouri P. R. Co. v. City of Omaha*, 235 U. S. 121. See, also, *Denver & R. G. R. Co. v. City and County of Denver*, 250 U. S. 241; *Erie R. Co. v. Board of Public Utility Commissioners*, 254 U. S. 394; *Chicago, R. I. & P. R. Co. v. Public Service Commission*, 287 S. W. (Mo.) 617; *Richmond, F. & P. R. Co. v. City of Richmond*, 145 Va. 225.

In a later case, Justice Holmes, in delivering the opinion of the supreme court of the United States in *Erie R. Co. v. Board of Public Utility Commissioners*, 254 U. S. 394, made use of the following language: "Grade crossings call for a necessary adjustment of two conflicting interests—that of the public using the streets and that of the railroads and the public using them. Generically the streets represent the more important interest of the two. There can be no doubt that they did when these railroads were laid out, or that the advent of automobiles has given them an additional claim to consideration. They always are the necessity of the whole public, which the railroads, vital as they are, hardly can be called to the same extent. Being places to which the public is invited and that it necessarily frequents, the state, in the care of which this interest is and from which, ultimately, the railroads derive their right to occupy the land, has a constitutional right to insist that they shall not be made dangerous to the public, whatever may be the cost to the parties introducing the danger. That is one of the most obvious cases of the police power, or to put the same proposition in another form, the authority of the railroads to project their moving masses across thoroughfares must be taken to be subject to the implied limitation that it may be cut down whenever and so far as the safety of the public requires. It is said that if the same requirement were made for the other grade crossings of the road it would soon be bankrupt. That the states might be so foolish as to kill a goose that lays golden eggs for them has no bearing on their constitutional rights. If it reasonably can be said that safety requires the change, it is for them to say whether they will insist upon it, and neither prospective bankruptcy nor engagement in interstate commerce can take away this fundamental right of the sovereign of the soil. *Denver & R. G. R. Co. v. City and County of Denver*, 250 U.S. 241. To engage in interstate commerce the railroad must get onto the land, and to get onto it must comply with the conditions imposed by the state for the safety of its citizens. Contracts made by the road are made subject to

the possible exercise of the sovereign right. *Denver & R. G. R. Co. v. City and County of Denver,* 250 U. S. 241; *Union Dry Goods Co v. Georgia Public Service Co.,* 248 U. S. 372; *Louisville & N. R. Co. v. Mottley,* 219 U. S. 467; *Northern P. R. Co. v. State,* 208 U. S. 583; *Manigault v. Springs,* 199 U. S. 473. If the burdens imposed are so great that the road cannot be run at a profit it can stop, whatever the misfortunes the stopping may produce. *Brooks-Scanlon Co. v. Railroad Commission,* 251 U. S. 396. Intelligent self-interest should lead to a careful consideration of what the road is able to do without ruin, but this is not a constitutional duty. In the opinion of the courts below the evidence justified the conclusion of the board that the expense would not be ruinous. Many details as to the particular situation of this road are disposed of without the need of further mention by what we have said thus far. The plaintiff in error discusses with considerable detail the effect of the changes upon private sidings. But its rights in respect of these are at least no greater than those in respect of the main line and are covered by the preceding discussion."

A consideration of cases above cited discloses that the source of the state's authority to adopt regulations for public safety at grade crossings is the police power of the state, and that the elimination of grade crossings is within the scope of that power. The fundamental fact upon which its existence is justified is that its exercise promotes the safety of either or both of two distinct classes:   (1) The passengers transported by the railways; and (2) travelers proceeding over the "intersected way." These considerations apply to "farm grade crossings." It must be conceded that each of these, in greater or less degree, is a place of potential danger. Indeed, some farm crossings, because of peculiar situation, may impose greater perils upon the public there in course of transportation, as well as upon persons and property on the premises where situated, than such as are incidental to usual grade crossings upon public highways. The regulation and elimination of farm grade crossings must therefore be deemed properly within the

scope of the police power. The doctrine cannot be gainsaid that the police power of a state under federal and state Constitution, when exercised in the interest of public safety, is unlimited except by the requirement that the exercise be not capricious or wanton or unreasonable. The extent and conditions upon which this power will be exercised obviously is a matter of legislative discretion on part of the state. It follows that authorities set forth herein are applicable to the present case and controlling, and that section 5527, Comp. St. 1922, as amended, is valid and enforceable.

The last proposition for consideration is embraced in the question, "Is the order of the railway commission reasonable in view of the peculiar circumstances of the case?" The authorities upon the question here involved are not numerous. Elliott on Railroads makes use of the following language as applicable thereto: "Communication from one part of a landowner's property to another part, which has been cut off by a railroad right of way, is often provided for by passways and subways constructed under the tracks. As a rule, such passways and subways are more convenient for the landowner, and are at the same time much safer for the railway company, for collisions and injuries at such crossings are practically reduced to a minimum. There are but few adjudicated cases as to whether or not a company can be compelled to furnish a crossing by means of a passway or subway under the track. * * * It has, however, been held, and correctly, we think, that where a railroad company was required to construct farm crossings, and it appeared that the track was on a high embankment, and there was a natural depression through which a subway could be more conveniently constructed than a grade crossing, such subway would be ordered constructed." 3 Elliott, Railroads (3d ed.) 476. *Beardsley v. Lehigh Valley R. Co.,* 142 N. Y. 173; *Van Wagner v. Central N. E. & W. R. Co.,* 80 Hun (N. Y.) 278; *Jones v. Seligman,* 81 N. Y. 190; *Powell v. Atchison, T. & S. F. R. Co.,* 215 Mo. 339.

We are also convinced from a careful examination of the record that, in view of the circumstances therein set forth,

the order entered by the railway commission requiring the construction of the underground cattle pass is not unreasonable, and that the order of the Nebraska state railway commission so directing must be, and is, in all things,

AFFIRMED.

Rose and Good, JJ., dissent.