STATEMENT OF FACTS.
Road Improvement District No. 7 of Little River County, Arkansas, instituted this action in the circuit court against St. Louis-San Francisco Railway Company *Page 732 
to recover judgment in the sum of $1,929.36 for an amount expended by it in constructing a railroad crossing, which the defendant was required to construct, under act 292 of the road acts of 1919, and which it had failed and refused to construct as required by the terms of said act. This is the second appeal in the case.
Upon the former trial the court sustained a demurrer to the complaint, and dismissed it for want of equity. Upon appeal the judgment was reversed, and the court held that a road improvement district, compelled to construct a highway crossing at a railroad, is not a mere volunteer, and is therefore entitled to recover the cost thereof from the railroad. It was further held that the act under which the road district was organized, having provided that, whenever the contemplated highways should cross the track of any railroad, the company owning the track should make the crossing and bear the cost and maintenance thereof, notice to the railroad company to construct such highway crossing was not necessary. Road Imp. Dist. No. 7 v. St. Louis-San Francisco Ry. Co., 172 Ark. 368, 288 S.W. 884.
Upon the retrial of the case it was shown that the commissioners of the road improvement district had filed in the office of the county clerk plans land specifications for the highways to be improved, as required by the act, and that the plans covered the four crossings involved in the suit. The amount of yardage of each crossing and an itemized statement of the materials out of which it should be constructed and the cost thereof were filed with the plans and specifications. The contract for the construction of the highways provided for the crossings to be constructed in the same manner and at the same cost as the balance of the highways. After the original contract was entered into, the price of materials increased, and it became necessary to make an additional contract in order to secure the construction of the proposed highways. The amount of materials to be used in the crossings was also increased. This *Page 733 
supplemental contract was entered into about a year after the execution of the original contract, and the highway crossings in question were constructed under its terms. An itemized statement of the materials used and the cost of construction was introduced at the trial in the court below. The attorney of the road district notified the section foreman and the station agent of the railroad company to construct the crossings in question, and the railroad company failed and refused to construct the same. Evidence was adduced by the railroad company tending to show that the cost of materials and price of labor in the account of the road district were excessive. Other facts will be stated or referred to in the opinion.
The jury returned a verdict for the plaintiff in the sum of $1,500, and from the judgment rendered the defendant has duly prosecuted an appeal to this court.
(after stating the facts). The road district in question was organized pursuant to a special act passed by the General Assembly of 1919. Road Acts of 1919, vol. 1, p. 1205. Complaint is again made that no notice to construct the crossings in question was given the railroad company. This question was decided adversely to the contention of counsel for the defendant upon the former appeal, to which attention has been called above. Upon the former appeal the court had "under consideration the provisions of 24, which provides that, when the highways shall cross the track of a railroad, the company owning the track shall make the crossing of the same material and in the same manner as the highway on either side, and shall bear the cost of constructing the crossing and its maintenance. The court said that, under the statute, it was the duty of the railroad company to construct and maintain the crossing, and that the railroad company must take notice *Page 734 
of the duties imposed upon it by the statute. The court also called attention to the fact that the plans for the crossing had been prepared and filed with the clerk, and that no additional notice was necessary to make the requirements of the statute binding upon the railroad company. This holding of the court upon the former appeal became the law of the case and governs us upon the present appeal.
It is next contended that the judgment should be reversed because the crossing was constructed over the entire width of the right-of-way, and not merely across its tracks. This contention of counsel for the defendant was decided adversely to them in Chicago, Rock Island Pacific Ry. Co. v. Redding, 124 Ark. 368,187 S.W. 651, Ann. Cas. 1918B, 183. In that case it was held that, in constructing and maintaining crossings over public roads and streets, railroad companies must anticipate the reasonable demands of the public, and, where the traffic requires it, the crossing must be made available for the entire width of the road or street. The road improvement district in question was organized for the purpose of improving certain public highways in the district. The plans for the proposed improvement contemplated that the railroad crossings should be constructed of the same material as the roads on either side. This was proper, in order to secure safety in travel. It was also proper that the whole of the right-of-way should be considered a part of the crossing. The crossing of the railroad would be more dangerous than if the crossing was not constructed of the same material and in the same. manner as the highways on either side of it. It is a matter of common knowledge that public travel is conducted largely by motor vehicles, and this is especially true where the public highways are improved, as in the present case.
It is next contended that the judgment should be reversed because the original plans were altered after they were filed in the office of the county clerk. This is *Page 735 
true, but such a course became necessary in order to secure the construction of the proposed improvement. The price of materials greatly advanced, and it became necessary to execute a supplemental contract in order to secure the construction of the improved highways according to the plans and specifications on file in the office of the county clerk. In order to accommodate the public travel and meet its reasonable requirements, it became necessary to change the plans of the public crossings, so that they required more material to be used in the construction thereof. No material change in the plans was had, however; and we do not think that the additional material and the advance in price which caused the execution of the supplemental contract could be said to be such a substantial change in the plans and specifications as to require additional notice to the railroad company.
It is next insisted that the railroad company could not be compelled to construct the crossings, because it had paid its assessment of benefits under the provisions of the act, and could not legally be required to pay any further additional amounts of taxes for the improvement of the highways. We do not agree with counsel in this contention. The construction of the highway crossings was under the police power, and had no part in the assessment of benefits. In State of Minnesota v. St. Paul, Minneapolis Manitoba Ry. Co.,98 Minn. 380, 108 N.W. 261, 28 L.R.A. (N.S.) 298, 120 Am. St. Rep. 581, 8 Ann. Cas. 1047, it was held that the State may, in the exercise of its police power, impose upon railroad companies whose lines intersect public highways laid out after the construction of the railroad the uncompensated duty of constructing and maintaining at such crossings all such safety devices as are reasonably necessary for the protection of the traveling public. It was further held that such a requirement, being referable to the police power, is not a taking of private property for public use, in violation of the Constitution. This case was *Page 736 
affirmed by the Supreme Court of the United States in214 U.S. 497, 29 S.Ct. 698, 53 L.ed. 1060, on the authority of the Northern Pacific Railway Co. v. Duluth,208 U.S. 583, 28 S.Ct. 341, 52 L.ed. 630. In the latter case it was held that, under the police power, a municipal corporation could require a railway company to repair, at its own expense, a viaduct and its approaches which carried a street over the right-of-way, notwithstanding the fact that the street was opened after the construction of the railroad, and that the railroad company's charter did not expressly require it to construct or maintain crossings at streets thereafter opened. It was also held that the right to exercise the police power is a continuing one that cannot be limited or contracted away by the State or its municipality, nor can it be destroyed by compromise, as it is immaterial upon what consideration the attempted contract is based.
This holding is in accordance with our previous decisions bearing on the question. In St. Louis-San Francisco Rd. Co. v. Fayetteville, 75 Ark. 534,87 S.W. 1174, it was held that, upon the opening of a new street across a railway right-of-way, the railway company was not entitled to the prospective cost of erecting all overhead crossing, as the Legislature might at any time compel it, without compensation, to construct such a crossing and keep it in repair.
Again, in Kansas City Southern Ry. Co. v. City of Mena, 123 Ark. 323, 185 S.W. 290, it was held that, where a city opened a street across the right-of-way and tracks of a railroad company, the railroad company is required to construct and maintain the crossing, but it cannot recover from the city any damages or compensation on that account.
The judgment of the circuit court was correct, and it will therefore be affirmed. *Page 737