# THE DISTRICT OF COLUMBIA *v.* KRAUSE.

---

STATUTE OF LIMITATIONS; ADVERSE POSSESSION; SEVENTH STREET
    ROAD; ROCKVILLE AND WASHINGTON TURNPIKE COMPANY.

1. Whether the statute of limitations will run against the District
   of Columbia in favor of a claimant by adverse possession of a
   portion of a public highway outside the boundary of the city
   of Washington, *quaere.*
2. The acts of congress of March 31, 1871, authorizing the municipal
   authorities of this District to take the property and franchises
   of the Rockville and Washington Turnpike Company and con-
   vert the Seventh street road into a public highway, and the act
   of the Legislative Assembly of the District of August 9, 1871,
   propriating a sum of money for payment of damages to the ap-
   Turnpike Company, can not, of themselves, be held to work a
   conveyance of the title of the road to the District, especially
   in the absence of any proof of payment of the money so ap-
   propriated.
3. There is nothing in the language of the acts of incorporation and
   the grants of the franchises of the Rockville and Washington

Turnpike Company, to prevent the running of the statute of limitations against that company in favor of a claimant by adverse possession to a portion of the Seventh street road between the boundary of the city of Washington and the boundary of the District of Columbia.

No. 683. Submitted October 8, 1897. Decided November 2, 1897.

Hearing on an appeal by the District of Columbia from a judgment on verdict in an action of trespass *quære clausum fregit*. *Affirmed*.

The facts are sufficiently stated in the opinion.

*Mr. S. T. Thomas*, Attorney of the District of Columbia, and *Mr. A. B. Duvall*, Assistant Attorney, for the appellant.

*Mr. Charles A. Keigwin* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

The judgment appealed from was recovered by the appellee, Margaret Krause, against the District of Columbia, in an action of trespass for an invasion of her premises and damages done to the property. Plaintiff owned and was in possession of the land fronting ninety-six feet upon what is called the Seventh street road, between the boundary of city of Washington and the boundary of the District of Columbia, under a title describing the same as abutting on said road. In September, 1893, the agents of the District removed the plaintiff's fence from the line claimed by her and dug away the soil, for a few feet, adjacent to her house, in the execution of a plan for widening and improving the highway. Plaintiff's right to recover damages was made to turn upon the question of her title by adverse possession of the strip of land upon which the entry was made.

The following is a substantial statement of the title claimed by the District of Columbia:

April 20, 1810, Congress authorized the organization of a corporation to build, and collect tolls on, a turnpike road from the city boundary to that of the District in the direc-

tion of Baltimore. Authority was given, under a form of procedure provided in the act, to acquire by condemnation and to lay out by metes and bounds a roadway not less than sixty-six feet wide, along which was to be constructed, of rock or gravel, a road not less than twenty-four feet wide. 2 Stat. 570.

No organization was had under this act. In August, 1817, the Legislature of Maryland incorporated the Rockville and Washington Turnpike Company, and empowered it to construct and operate a turnpike road from Rockville, Maryland, to the boundary of the District, in order to establish communication with Washington. This corporation was authorized to acquire a roadway sixty-six feet in width. On February 15, 1819, Congress passed an act reciting the Maryland incorporation act, and concluding that the same " be and is hereby declared to be in full force within the District of Columbia." The building of the road from the District line to the city boundary, in continuation of the road from Rockville, was expressly authorized. The third section of the act invests the said company with all the rights, privileges, and so forth, of the grant of 1810, and declares the same subject to all the obligations imposed by that act. 3 Stat. 482.

A question was raised on the argument as to whether the Maryland act authorized the acquisition of the land required for the road in fee or as an easement merely. This we need not occupy time in discussing, as it cuts no figure in the case presented in the record, as we view it. It may become a question of importance in some other case, in respect of the claim by the District of title in fee simple to a strip of land ninety feet wide, or less, occupied by the said Seventh street road, and will therefore be postponed for decision until such a case may be presented.

The District offered in evidence a copy from the record of deeds under date of July 19, 1819, a document signed by two commissioners and certified to by a surveyor, re-

porting to the circuit court that a roadway ninety feet wide had been condemned and laid off, according to an accompanying plat, for the occupation of the Rockville and Washington Turnpike Company along the course heretofore mentioned. The record showed an indorsement upon said instrument as follows: "Accepted and ordered to be recorded." (Signed) "William Brant, Clk." There is nothing else to show an approval of the report which was signed by only two commissioners, when three were required by the act. The only attempt to prove a search for the original showed that the same went back no later than the records of the year 1863. Whether the preliminary proof was sufficient to authorize the admission of the record, as well as whether the report was fatally defective because of the failure of the third commissioner to take part in the proceedings (both of which objections were made by the plaintiff at the time of offer), are questions that may also be passed without decision now. They do not necessarily arise. It may be remarked, however, that if there are other cases pending in the trial court in which that document is important, prudence would dictate a diligent search of the records of the proper date for the original report and such other proceedings, if any, as may have been had in connection therewith.

The proof seems to show that the line of roadway actually laid out and claimed by the Turnpike Company varied from sixty to sixty-six feet in width; which last is the maximum width authorized by the Maryland act. Whether the right of the corporation to acquire land must be regarded as measured by the limitations of the Maryland incorporation act, which was adopted by Congress, or by the grant of the act of 1810, and the permission given to succeed thereto, is another question that need not now be decided.

The testimony of defendant's own witness, the surveyor who laid out the lines for the improvement of the highway in September, 1893, shows that from 1851 to 1893 the road

11 Ct. App.—27

was generally not more than sixty feet wide, as marked by the fences on and near the plaintiff's land.

Congress, by another act, passed March 3, 1871, authorized the municipal authorities of the District to take the property and franchises of the Turnpike Company and convert the road into a free public highway. 16 Stat. 586.

An act of the Legislative Assembly of the District, passed August 9, 1871, was read in evidence, and showed an appropriation of the sum of $14,277.48 for the payment of damages to the Turnpike Company in order to give effect to the act of Congress. No evidence was offered to show a condemnation of the Turnpike Company's property, or its purchase and conveyance, or even the payment to any person of the money so appropriated.

It appears, however, that in 1872, the District authorities went upon the highway and widened it throughout its length to sixty-six feet; and in so doing moved the fence of the plaintiff a few feet within the line it had formerly occupied. This fence remained in the new location continuously from that time until the entry and removal made in September, 1893. Plaintiff's husband acquired the property by deed and for valuable consideration in 1866, and since that time plaintiff has been in possession and occupation of the land and the house thereon, claiming title to the line occupied by her said fence. The deeds under which she claims describe the land as abutting on said road.

The court instructed the jury to find for the plaintiff if her adverse possession had continued for more than twenty years before the entry made in September, 1893. This charge contains all the requisites necessary to such title, and is not excepted to for substantial error. The very interesting and important question that has been argued by defendant, in respect of the running of the statute of limitations against the District of Columbia in the matter of adverse possession of a public highway, outside the bound-

ary of the city of Washington, does not arise under the facts set forth in this record, by which alone the soundness of the charge must be tested.

Appellant assumes, in the first place, that there had not been sufficient proof of adverse possession for twenty years before the time when the Board of Public Works entered and improved the road in 1872. The evidence is not clear on that point, but it is unimportant, because the charge of the court did not set that as a limit. On the other hand, the time within which the bar might become fixed, was extended to 1893. In the second place, it is assumed, and this foundation is absolutely necessary to the maintenance of the proposition, that the District actually acquired title to the lands of the Turnpike Company before plaintiff's title could have ripened through adverse possession; and that, by virtue of the rule of law contended for, a stop was put to the further running of the statute, although the adverse possession of plaintiff was permitted until September, 1893. As we have seen, however, there was no foundation for the operation of this rule of law laid in the evidence. There was no proof whatever offered to show this acquisition of title. If the District had a conveyance or transfer it failed to produce it. Surely the act of Congress merely authorizing the acquisition, and the act of the District Assembly appropriating money to pay damages, could not of themselves work a conveyance of the title, especially in the absence of any proof of payment of the money so appropriated.

The real question presented by the record, then resolves itself into this: Did the statute of limitations run against the private corporation? We think that there is nothing in the language of the acts of incorporation and the grants of the franchises that would take this case out of the rule that applies in all such cases. The charge of the court was clearly right under the evidence in the case, and the verdict followed as a matter of course. The judgment must, therefore, be affirmed, with costs. *Affirmed.*