## MESSERSMITH et ux. *v.* MAYOR AND COMMON COUNCIL OF RIVERDALE

[No. 9, September Term, 1960.]

324

*Decided October 25, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Waldo Burnside* for the appellants.

*Edward B. Dunford* for the appellee.

HORNEY, J., delivered the opinion of the Court.

Paul L. Messersmith and Isabel E. Messersmith, his wife (the plaintiffs below) and their predecessor in title, having enclosed and maintained an adjoining lot or park owned by the Mayor and Common Council of Riverdale (the defendant below) for more than a third of a century as if it were their own, sought a decree "quieting title" and declaring that they had an "indefeasible fee simple title" to the lot "free and clear of any claim" of the town of Riverdale. When the chancellor denied relief and dismissed their bill of complaint, the plaintiffs appealed.

The lot in dispute is a small rectangular lot located at the northeast corner of the intersection of the Baltimore-Washington Boulevard (U. S. Route 1) and Oliver Street (formerly Washington Avenue), in Riverdale, Prince George's County, with a frontage of 26.3 feet on the boulevard and 48.5 feet on the street.

In 1889 the Riverdale Park Company recorded a plat showing, along with a general subdivision plan, the unnumbered lot in question. It was once the site of a "watch house" on the private road leading to what was known as the Calvert Mansion. In 1920 the subdivision was included within the corporate limits of the municipality known as Riverdale. In 1927 certain landowners, including plaintiffs' predecessor in title, sought to enjoin the owners of the subdivision from selling the unnumbered lots or parks in the subdivision, but before the suit was concluded, the subdivision owners compromised and settled the question of ownership by granting the five small parcels then in controversy, including the lot now in question, to the municipal corporation, "its successors and assigns, forever," but the grants were limited by the habendum clause to a use "as public parks and parking for the use of the public and especially for the lot owners of the Town of Riverdale." There was no reversion clause requiring return of the lots to the grantor in the event the town should decline to use the lots for the granted purpose, or, having properly used them for a period of time, should subsequently abuse such use or discontinue it entirely. The deed, which was in

effect an offer to dedicate the lots to a public use, was formally accepted by a resolution of the Mayor and Common Council on February 18, 1929, and this action was approved by a decree of the Circuit Court for Prince George's County on April 8, 1929.

The parties, by their agreed statement of facts, concede that while the town had made parks and other recreational areas for use of the public of the other public lots, it had never taken control of, or maintained or exercised any supervision over the lot in question. On the other hand, this lot has been enclosed with the lot of the plaintiffs by a low hedge, landscaped, and the grass cut whenever necessary for a period of more than twenty years. In appearance the lot is a part of the yard or garden of the plaintiffs, and there is nothing to indicate that it is a public park or recreational area. When the plaintiffs' predecessor took over the care and maintenance of the lot, it was unoccupied and unimproved. Now it is part of a well maintained garden. The plaintiffs, however, never sought to have the lot assessed to them for state, county or municipal taxes. On the other hand, the town maintains that it never had any intention of abandoning the lot and that it is without authority to sell it to the plaintiffs or to anyone. It is on the stated acts of improvement and possession that the plaintiffs base their claim and seek legal title. They rely on two theories to sustain their claim: (i) that the town has abandoned the lot and the plaintiffs have acquired title by non-user, or (ii) that they have acquired title by adverse possession.

### (i)

The gist of the abandonment contention is apparently based on the theory that the town, having failed to exercise any of the usual or normal functions of ownership over the lot, title thereto has been abandoned. The claim is without substance.

While an intention to relinquish or part with any kind of property is an essential element of abandonment, the general rule is that title to property cannot be lost without an intention to abandon it, and mere non-user, even though it be long-continued, is not enough in and of itself to establish an abandonment. There must always be some affirmative or straight-

forward act to indicate an intention to abandon. But, irrespective of an intention to abandon, it has been held that the abandonment of a possessory interest in real property is different from the rule applicable to the possession of an easement or the ownership of personal property in that ownership of a possessory interest in real property, such as there was in this case, can never be lost solely by abandonment. See *City of Fergus Falls v. Whitlock,* 77 N. W. 2d 194 (Minn. 1956) ; 2 *American Law of Property,* § 8.98. See also 1 M. L. E., *Abandonment,* § 2. In any event, even though non-user of the lot for public purposes was conceded, it was not shown that the town ever had any intention to relinquish or abandon its title thereto. Obviously, the doctrine of abandonment is not applicable in this case.

(ii)

The contention with respect to adverse possession is likewise without merit. The claim is that the plaintiffs' action in maintaining the lot for more than twenty years constitutes a sufficient basis for adverse possession.[1] And, although conceding that in ordinary circumstances adverse possession will not run against a municipal corporation, the argument is that since there has been non-acceptance, if not an abandonment, the rights of the public are not affected by the adverse possession. The argument is not sustainable.

By its charter, the town of Riverdale, among other common corporate powers, is authorized to "purchase and hold real and personal property or dispose of the same for the benefit of said town." Code P. L. L., Art. 17 (Prince George's County), § 864 [Everstine (1953) § 1276]. The powers thus conferred, however, refer only to property in which the town holds absolute title, and not to property it holds as a public trust.

The general rule as to alienability of municipally held prop-

---

1. In asserting this claim, the plaintiffs rely upon possession by themselves and their predecessor in interest to make out possession for the requisite twenty year period. The record is not clear that the foundation for tacking exists, but we shall assume, as the parties seem to have done, that it does exist.

erty was clearly stated in *Montgomery County v. Maryland-Washington Metropolitan District,* 202 Md. 293, 96 A. 2d 353 (1953), where it was said at p. 303:

> "A distinction is frequently drawn between property held by a county [2] in its proprietary [or business] capacity and that held by it in its governmental capacity. Property which is held in a governmental capacity or is impressed with a public trust, cannot be disposed of without special statutory authority."

See also 10 McQuillin, *Municipal Corporations,* § 28.55 (3rd ed.) ; 2 Dillon, *Municipal Corporations,* § 1188 (5th ed.). There can be little doubt that the lot in question is impressed with a public trust. Cf. *Mayor & C. C. of Baltimore v. Peabody Institute of Baltimore,* 175 Md. 186, 200 Atl. 375 (1938).

It is equally clear that property held as a public trust may not be privately acquired by adverse possession. See *Town Com'rs of Centreville v. County Com'rs of Queen Anne's County,* 199 Md. 652, 87 A. 2d 599 (1952) ; *Brady v. Mayor & C. C. of Baltimore,* 130 Md. 506, 101 Atl. 142 (1917) ; *Bond v. Murray,* 118 Md. 445, 84 Atl. 655 (1912) ; *Cushwa v. Burgess & Com'rs of Williamsport,* 117 Md. 306, 83 Atl. 389 (1912) ; 1 M. L. E., *Adverse Possession,* § 6. See also 4 Tiffany, *Real Property* (3rd ed.), § 1170; 1 Am. Jur., *Adverse Possession,* § 18; 2 C.J.S., *Adverse Possession,* § 14. While it was conceded that the town had never exercised any control over the lot, the use by the plaintiffs was not a use for the benefit of the public. See *Centreville v. Queen Anne's County, supra,* at p. 656. Under the circumstances in this case, it is not possible for the plaintiffs to acquire the lot in question by adverse possession. It may be that the town could obtain authority to sell the lot to the plaintiffs, but that is a matter for the legislature to decide, not the courts.

For the reasons expressed herein, the decree must be affirmed.

*Decree affirmed; appellants to pay costs.*

---

2. In this State a "county" (as well as a city or town) is considered to be a "municipal corporation." See *Neuenschwander v. Wash. San. Com.,* 187 Md. 67, 48 A. 2d 593 (1946).