**SOLID ROCK CHURCH, DISCIPLES OF CHRIST, Appellant,**

v.

**FRIENDSHIP PUBLIC CHARTER SCHOOL, INC., Appellee.**

No. 04–CV–1531.

District of Columbia Court of Appeals.

Argued March 22, 2006.

Decided May 17, 2007.

---

Stephanie K. Rones, for appellant.

Richard G. Wise, Washington, DC, for appellee.

Before REID and FISHER, Associate Judges, and FERREN, Senior Judge.

REID, Associate Judge:

This case concerns a property dispute between appellant, Solid Rock Church, Disciples of Christ ("Solid Rock"), and appellee, Friendship Public Charter School, Inc. ("Friendship"), which operates its school in a building originally known as the Woodridge Elementary School ("Woodridge"), previously owned by the District of Columbia prior to its transfer to Friendship.[1] Solid Rock claims ownership by adverse possession of a portion of land which Friendship asserts it acquired from the District. The trial court granted summary judgment in behalf of Friendship. On appeal, Solid Rock claims that summary judgment was improper because there are genuine issues of material fact that must be resolved. We partially affirm the trial court's grant of summary judgment to Friendship, holding that there is no right of adverse possession with respect to District of Columbia property designated for public use. However, we remand this case to the trial court for purposes of determining the boundaries and dimensions of the property in dispute, and what portion, if not all, of that disputed property properly belongs to Friendship.

## FACTUAL SUMMARY

The record before us shows that in 1981, Solid Rock purchased property, in fee simple, located at 2900 Central Avenue, in the Northeast quadrant of the District (Square 4339, Lot 26—described as part of the Resurvey of Woodridge, Plat of Brewood's Subdivision, as recorded in Liber 46, Folio 159 of records in the Office of the Surveyor). Solid Rock erected a fence with a locked gate in a space (then believed to be an alley or gully) situated between Solid Rock's property and Woodridge. Prior to erection of the fence, the space had been

1. As we indicate in this opinion, Friendship, although a "charter" school, is nonetheless, like Woodbridge, a District of Columbia "public" school.

used for dumping debris, and criminal activity had occurred there. In addition to the fence, Solid Rock posted a "No Trespassing" sign. For years thereafter, it considered the property encompassed by the fence to be part of its lot, and now claims that it acquired the disputed land by adverse possession after a period of fifteen years had elapsed, or as of 1996.

On November 8, 2000, the District of Columbia transferred Woodridge, located at 2929 Carlton Avenue, Northeast, to Friendship by way of a quitclaim deed. The transferred property consisted of Lot 812 in Square 4339. Exhibit A, attached to the Quitclaim Deed, explained that Lot 812 was composed of lots previously known as 19, 20, 21, 22, 23, 809 and 810, Square 4339. Exhibit A further described the land by metes and bounds, with no reference to the historic documents reflecting these measurements.

On March 18, 2004, Friendship filed a complaint against Solid Rock for declaratory, injunctive and ejectment relief, alleging that Solid Rock had "constructed improvements which are, or can be used as a driveway and a garage ... which are located in part on [Solid Rock's] [p]roperty and in whole or in part on Woodridge." Friendship filed a motion for summary judgment on October 27, 2004, arguing that Solid Rock could not acquire property by asserting adverse possession against the District, and that Friendship has owned the disputed property since the year 2000. Several documents were attached to the motion. These included: (1) an affidavit signed by Kimberly Campbell, Chief of Staff of Friendship, which stated, in part, that "Friendship did not become aware of the [e]ncroachment until on or about January 2004 when a survey conducted of Woodridge showed the [e]ncroachment"; (2) Friendship's quitclaim deed from the District; (3) a single diagram, dated September 23, 2003, prepared by Currie and Associates, and labeled as a "Boundary and Topographic Survey, Lot 812 Square 4339, Woodridge High School, Washington, D.C."; and Plate 10 (a diagram of a large area with no description, which included Lots 26 and 812) from one of the four volumes published by R.H. Baist, Surveyor (Philadelphia, 1959).

Solid Rock filed an answer, and an amended answer and counterclaim, alleging adverse possession, as well as an opposition to Friendship's motion for summary judgment. The opposition to the summary judgment motion contended that Friendship had no standing to raise any of the District's defenses; the District never claimed ownership of the disputed property between 1981 and 2000; and Solid Rock acquired the disputed property by adverse possession. Attached to Solid Rock's opposition were several documents, including: (1) a letter from Roland Richardson, Jr., an architect and specifications consultant obtained by Solid Rock, indicating that he had reviewed documents in the District's Office of Surveyor, including a plat and site plan for Square 4339, Lots 23, 26, and 27, and concluding that although "[t]here is no easement or open area noted in any of the records reviewed," the space between the existing fence and the property line between Lot # 812 and Lot # 26, was probably an easement for the power poles located along the property line; and further, the boundary of Lot 26 on the Central Avenue side of the property actually reflected 116.4 feet, instead of the 90 feet recorded on the historic plat covering Lot 26; (2) an affidavit from Bishop Thorpe of Solid Rock stating that the garage referenced by Friendship was on the property when Solid Rock acquired it but that Solid Rock expanded and improved it between 1982–1984, and again in 1990; Friendship's quitclaim deed did not identify the disputed property as part of that

conveyed to Friendship; Exhibit A attached to the quitclaim deed "is not the official land description on file with the District Surveyor's Records Office"; Solid Rock fenced in its entire property in 1981, including the church building and the disputed property, and "exercised actual, open and notorious, exclusive and hostile, and continuous possession over the property for a period of more than fifteen (15) years against the District ..."; and (3) Solid Rock's deed in fee simple. In its statement of material facts in dispute Solid Rock asserted, in part, that the disputed property never was located on Woodridge property, and that Exhibit A to the quitclaim deed was not provided to Friendship by the District.

On December 3, 2004, the trial court granted Friendship's motion for summary judgment, as well as judgment on Solid Rock's counterclaim. The court declared "[t]hat both the driveway and the garage structure which are the subject of this action are located in part on Friendship's Property and in part on [Solid Rock's] Property"; and ordered Solid Rock to remove the encroachment at its own expense, within thirty (30) days of the docketing of the court's order. On January 7, 2005, the trial judge met with the parties to consider Solid Rock's emergency motion for a stay and to "clarify ... the bases for [his] ruling on the motion for summary judgment." He stated that "as a matter of law there was no genuine issue of fact regarding whether the very structure in question ... did in fact encroach on property ... that is now owned by Friendship...." Furthermore, Solid Rock "cannot adversely possess [property] against the District of Columbia, against a municipality[,]" and "the D.C. public schools are part of the District of Columbia government for purposes of this doctrine ..." The trial court concluded that Friendship had standing because its "interest[s] clear-

ly are affected by the encroachment in the case...." Finally, the trial judge stated that in issuing the order on the summary judgment motion, his "intention was to have that order be on the grounds stated by the ... plaintiffs."

## ANALYSIS

Solid Rock contends that Friendship lacked "standing to sue the Church to recover the disputed property." It also argues, in essence, that the trial court erred in granting Friendship's motion for summary judgment because there are a number of material facts in dispute; and further maintains that it acquired the disputed property through adverse possession. Friendship insists that it had standing to bring its lawsuit against Solid Rock, that Solid Rock could not acquire the property through adverse possession since the District is a municipality, and further, Friendship claims that it exercised ownership rights over the disputed property.

### Standard of Review

■ This court reviews summary judgment decisions *de novo*, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in favor of that party. *The New 3145 Deauville L.L.C. v. First Am. Title Ins. Co.*, 881 A.2d 624, 627 (D.C.2005) (citing *Brown v. George Washington Univ.*, 802 A.2d 382, 385 (D.C.2002)); *see also Holland v. Hannan*, 456 A.2d 807, 814–15 (D.C.1983). Summary judgment may be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Super. Ct. Civ. R. 56; *Id.*; *see also Kelley v. Broadmoor Coop. Apartments*, 676 A.2d 453, 456 (D.C.1996). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that

party." *Deauville, supra,* 881 A.2d at 627 (quoting *Brown, supra,* 802 A.2d at 385) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

### The Standing Issue

■ Super. Ct. Civ. R. 17(a) reads in part: "Every action shall be prosecuted in the name of the real party in interest." As we have said previously, "[i]t is an elementary matter of jurisprudence that an individual must have standing in order to maintain an action. Basic to standing is the requirement that the individual be injured in fact by the conduct of the other party." *Burleson v. United Title & Escrow Co.,* 484 A.2d 535, 537 (D.C.1983) (per curiam). The three other essential "requisites" of standing are causation, redressability, and the "zone of interest" requirement, which is "prudential" rather than "constitutionally compelled." *Brentwood Liquors, Inc. v. District of Columbia Alcoholic Beverage Control Bd.,* 661 A.2d 652, 654–55 (D.C. 1995).

■ Solid Rock argues that: "There exists no evidence in the record that Friendship has suffered an injury in fact by the Church's adverse possession of the disputed property." In *Burleson, supra,* we determined that the plaintiff did not have standing to maintain his action against United Title and Escrow Co., Inc. for unauthorized practice of law at a property in which he had no interest. 484 A.2d at 537. The plaintiff had sold his right to purchase the property to another purchaser. *Id.* Moreover, the plaintiff had "demonstrated [no] personal or other involvement with [appellee, the Title Company]." *Id.* We decided there was "no injury ... flowing from [the Title Company's] conduct" to the plaintiff. *Id.* Friendship's status is different.

Here, Friendship has at least a colorable interest in the property encumbered by Solid Rock, and because of that encumbrance, Friendship cannot develop the disputed portion of its land to further the operations of its charter school. Since Solid Rock's alleged encroachment upon the disputed land blocks that initiative, Friendship has standing because it alleges injury "flowing from" Solid Rock's conduct. Friendship filed its action against Solid Rock in its own right. The District no longer owns the disputed land, since in the year 2000, the District transferred, by quitclaim deed, its entire interest in Woodridge to Friendship. Therefore, as owner of the property on which the charter school sits, Friendship is the real party in interest. *Burleson, supra,* 484 A.2d at 537. In short, the trial court correctly concluded that Friendship had standing to bring its action.

### The Adverse Possession Issue

Solid Rock insists that it acquired the land now claimed by Friendship by adverse possession, as of 1996, before the District transferred Woodridge to Friendship by way of quitclaim deed. Friendship points out that "[t]he legal owner of Woodridge before it was acquired by Friendship was ... the District of Columbia," because the Board of Education for the District's public schools "is not a legal entity subject to suit." Furthermore, Friendship contends, the District is a municipal corporation, and "one cannot acquire property from a municipal corporation by adverse possession."

■ The law is settled that the District of Columbia, as a municipality, enjoys limited sovereign immunity from the operation of statutes of limitation under the common law doctrine of *nullum tempus occurit regi* ("no time runs against the sovereign"), and under D.C.Code § 12–301 (2001), while in the performance of public

functions. *See, e.g., District of Columbia v. Owens–Corning Fiberglas Corp.,* 572 A.2d 394, 401–04 (D.C.1989) (citing *Guaranty Trust Co. v. United States,* 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938)) (reasoning that *nullum tempus* is a reservation or exception, introduced for the public benefit and equally applicable to all governments) (other citations omitted). It is inherent in the *nullum tempus* doctrine that "the people, as sovereign, are entitled to immunity from government functionaries' lax prosecution of public rights." [2] *Id.*

■ The District is immune from statutes of limitation in suits relating to a public function. In *Owens–Corning,* we held that the District could exercise municipal *nullum tempus* immunity when suing for damages that would serve to eliminate a substantial threat to public health. 572 A.2d at 410. There, the District's interest was to remove asbestos hazards from more than 2400 public buildings, including public schools. *Id.* at 407. We reasoned that "[w]here the District acquires a right of action directly related to its duty to perform a service to the public ... a suit to recover money damages to enable the District to perform that service is public rather than proprietary." *Id.* Therefore, we deemed the tort action brought by the District deserving of municipal *nullum tempus* protection because it was a suit related to performance of a public function. *Id.* at 408, 410.

The District has limited case law concerning whether the applicable statute of limitation runs against a municipality in adverse possession claims. In the early case of the *District of Columbia v. Krause,* 11 App.D.C. 398 (1897), the court considered the District's position that "a stop was put to the further running of the statute" of limitation where a municipality was authorized to acquire title to disputed land before the statutory period for a private adverse claimant had run against the previous owner. *Id.* at 403. The disputed land was a portion of a public highway between the boundary of the District of Columbia and the boundary of the City of Washington. *Id.* at 399. Because the District could not produce evidence that it had acquired title to the disputed portion of the public highway, the question of whether the statute of limitation ran against the District in favor of a private adverse claimant to a portion of a public highway outside the boundary of the City of Washington was left open. *Id.* at 403. As the court subsequently said in *Rudolph v. Peters,* 35 App.D.C. 438 (1910): "[W]ithout deciding whether the statute of limitations would run against the District of Columbia in favor of a claimant by adverse possession of a portion of a public highway outside of the boundary of the city of Washington, [*Krause*] stated that, at all events, the statute would constitute a bar unless the District actually acquired title to the lands *before the plaintiff's title ripened through adverse possession.*" *Id.* at 448–49 (emphasis in original).

■ Because of the dearth of early case law regarding adverse possession against the District, and because *nullum*

**2.** In *Owens–Corning,* the District brought suit against asbestos miners, manufacturers, sellers and distributors for the costs of removing asbestos from various public buildings. 572 A.2d at 395. The trial court granted summary judgment against the government holding the District's claims to be barred by the statutes of limitations and repose. *Id.* at 400. This court reversed the judgment and held that under the doctrine of *nullum tempus occurit regi* ("no time runs against the sovereign"), "the District of Columbia enjoys a common-law municipal immunity from the effects of the statutes of limitations and repose when suing in its municipal capacity to vindicate public rights." *Id.* at 397, 401, and 403.

*tempus* is a common law doctrine, we may look to Maryland common law for guidance since "the District of Columbia derives its common law from Maryland as of 1801." *West v. United States*, 866 A.2d 74, 79 (D.C.2005); *In re C.A.P.*, 633 A.2d 787, 790 (D.C.1993) ("District derives its common law from Maryland and decisions of Maryland courts on questions of common law are authoritative in the absence of District authority") (citation omitted); D.C.Code § 45–401 (2001).

■ Under Maryland law, "title to land dedicated to public use cannot be acquired by private individuals by prescription." *Town Comm'rs of Centreville v. County Comm'rs of Queen Anne's County*, 199 Md. 652, 87 A.2d 599, 601 (1952) (citations omitted). No private landowner can adversely possess a portion of public land it encloses and cultivates as its own unless the land is abandoned by the municipality and the adverse claimant continues its public use. *Id.* (citations omitted). In *Messersmith v. Mayor & Common Council of Riverdale*, 223 Md. 323, 164 A.2d 523 (1960), private landowners "enclosed and maintained an adjoining lot or park owned by the Mayor and Common Council of Riverdale … for more than a third of a century as if it were their own." *Id.* at 523. Riverdale "had never taken control of, or maintained or exercised any supervision over the lot in question." *Id.* at 524. The court concluded that even though Riverdale never exercised any control over the property, "it was not shown that the town ever had any intention to relinquish or abandon its title," and that "property held as a public trust may not be privately acquired by adverse possession." *Id.* at 525. The court also declared, "the general rule is that title to property cannot be lost without an intention to abandon it, and mere non-use [ ], even though it be long continued, is not enough in and of itself to establish an abandonment. There must always be some affirmative or staightforward act to indicate an intention to abandon." *Id.* at 524. But, Maryland law also recognizes the principle that "municipal property not devoted to a public use can be [ ] acquired [by adverse possession]." *Siejack v. Mayor & City Council of Baltimore*, 270 Md. 640, 313 A.2d 843, 846 (1974) (citing 10 EUGENE MCQUILLIN, MUNICIPAL CORPORATIONS § 28.55 (1966 Rev. Vol.) (other citations omitted)). Thus, " 'property held [by the government] in a proprietary capacity and not dedicated to public use, or impressed with a trust …' " may be subject to adverse possession. *Siejack, supra*, 313 A.2d at 846 (quoting *Montgomery County v. Maryland–Washington Metro. Dist.*, 202 Md. 293, 96 A.2d 353 (1953)). *See also* 16 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 91.11 (Matthew Bender & Co., Inc. 2007) ("Many jurisdictions … hold that land held by state or local government for a proprietary or nonpublic purpose may be adversely possessed") (footnote omitted); Carl C. Risch, COMMENT: *Encouraging the Responsible Use of Land By Municipalities: The Erosion of Nullum Tempus Occurrit Regi and the Use of Adverse Possession Against Municipal Land Owners*, 99 DICK. L.REV. 197 (1994).

In our relatively recent cases, we have recognized the governmental/proprietary distinction. We have held that the District of Columbia Water and Sewer Authority ("WASA") could not benefit from the doctrine of *nullum tempus* because the "functions and activities of WASA, a separate corporate body distinct from the District of Columbia, are proprietary in nature…." *District of Columbia Water & Sewer Auth. v. Delon Hampton & Assocs.*, 851 A.2d 410, 416 (D.C.2004); *see also The New 3145 Deauville L.L.C., supra*, 881 A.2d at 629. Nevertheless, we reiterated that "*nullum tempus* applie[s] when the

District [brings] an action to enforce a public right; however, *nullum tempus* [does] not apply when the District brings an action related only to a proprietary interest." *Delon Hampton & Assocs., supra,* 851 A.2d at 415 (citing *Owens–Corning, supra,* 572 A.2d at 401 & n. 8).

■ Here, Solid Rock claims to have enclosed and improved the disputed land for over twenty years, and therefore to have acquired it by adverse possession. Friendship in essence claims that the statute of limitations governing adverse possession could not have run against the District because at the time the church purchased its property, the District owned the disputed property as part of Woodbridge, a public school, and that when the District transferred Woodbridge to Friendship in 2000, Friendship continued to operate Woodbridge as a public school. We agree with Friendship and the trial court.

■ This case is controlled by the principle that municipal property devoted to a public use may not be acquired by adverse possession and the doctrine of *nullum tempus occurit regi* ("no time runs against the sovereign") is directly applicable. During the time the District owned the Woodbridge property, it held title in its governmental capacity and operated it as a public school. Thus, the Woodbridge property was dedicated to a public use and could not have been acquired by private landowners by prescription. *Town Comm'rs of Centreville, supra,* 87 A.2d at 601; *see also Lysicki v. Montour Sch.*

*Dist.,* 701 A.2d 630 (Pa.Commw.Ct.1997) (holding no private landowner can adversely possess property of the School District because School Districts are agents of the Commonwealth and are therefore immune from the running of time against them). There is no hint in this record that the District abandoned or intended to abandon any part of the Woodbridge property during its ownership. To prevail on its apparent theory that the District abandoned that part of the Woodbridge property which is encumbered by its garage and fence, Solid Rock must show "some affirmative or straightforward act [on the part of the District] to indicate [the District's] intention to abandon" that portion of the Woodbridge property which Solid Rock has encumbered. *Messersmith, supra,* 164 A.2d at 524. It is insufficient to demonstrate only, as Solid Rock does, that the District did not use the disputed property for a long, continued period of time. *Id.* Moreover, when the District conveyed the Woodbridge property to Friendship, it did not lose its public character and its public use did not cease; the property is still dedicated to a public use, public education.[3] Moreover, "[a]lthough a charter school 'is not part of the District of Columbia public schools,' it is 'a publicly funded school in the District of Columbia.'" *Gatlin v. United States,* 833 A.2d 995, 1005 (D.C.2003) (citations omitted). And, "title to land dedicated to public use cannot be acquired by private individuals by prescription," or by adverse possession. *Town Comm'rs of Centreville, supra,* 87 A.2d at 601 (citation omitted).

---

**3.** We do not believe that there is enough in the record to establish that the disputed land was devoted to a proprietary rather than a governmental use. Mr. Richardson, Solid Rock's architect and specifications consultant, expressed the view that "the space between [Solid Rock's] existing fence and the property line between Lot # 812 and Lot # 26, was probably an easement for the power poles located along the property line …," but there is no credible evidence in the record to that effect. At any rate, we view the property as a whole in concluding that it was impressed with a public use, the education of students.

On this record, we are satisfied that the trial court properly granted summary judgment in favor of Friendship. That conclusion does not end our inquiry, however, because the remaining question is what part of the land encumbered by Solid Rock's fence and garage belongs to Friendship.

### Boundary Survey

■ The parties rely on different surveys and documents with respect to the identification of ownership of the disputed property. Solid Rock presents a July 2004 hand drawing, labeled "Survey of Lot 26, Sq 4339," apparently drawn by Mr. Richardson, as well as their deed containing a description of the church property as found on a plat in the Office of the Surveyor. Friendship submits a January 2004 boundary and topographical survey of Woodbridge High School prepared by Currie & Associates (Plaintiff's Exhibit 5), an affidavit of Anthony G. Currie,[4] Plate 10 from a 1959 work of surveyor R.H. Baist, and its Quitclaim Deed. And, the trial court's order granting summary judg-

ment to Friendship states "[t]hat both the driveway and the garage structure which are the subject of this action are located in part on Friendship's Property and in part on the Church's Property." However, the order does not refer to any boundary survey conducted on both Solid Rock's and Friendship's property by a licensed surveyor who is also on the District's Office of the Surveyor's list of "Registered DC Surveyors." What is not clear from this record, then, are the boundaries of both properties based both on the historic documents in the Office of the Surveyor (including the plat for Square 4339), and a boundary survey of both properties, taking into consideration those historic documents.

■ Consequently, we remand this case to the trial court with instructions to order the parties to obtain a boundary survey of their respective properties, prepared by a surveyor listed on the Office of the Surveyor's "Registered DC Surveyors,"[5] in accordance with the requirements of the Office of the Surveyor.[6] The order

---

4. Mr. Currie's affidavit states that plaintiff's Exhibit 5 represents only "a portion of the survey conducted on the Woodbridge Property by [his] firm in January 2004." In addition, a portion of the disputed property is not reflected on the survey. As Mr. Currie declares: "Although it is not depicted on the survey of the Woodbridge Property, there is a concrete driveway which starts from a curb cut at Central Avenue and leads to the Structure. This driveway is located in part on the Woodbridge Property and in part on the Church Property."

5. The list of "Registered DC Surveyors" may be obtained from the website of the District of Columbia Department of Consumer and Regulatory Affairs ("DCRA"), Office of the Surveyor. Since Anthony G. Currie of Currie & Associates appears on the list, the parties may find it economical, given the work already performed by his firm, to obtain his services.

6. Solid Rock raises the question on appeal, as it did in the trial court, as to whether the

District is an indispensable party. It asserts that "the District and only the District could provide satisfactory evidence as to whether it ever owned the disputed property." "A party is indispensable when he [or it] has an interest in the proceeding not distinct and severable, and a final decree cannot be made in the party's absence without having an injurious effect on that interest; when the court cannot do complete and final justice without affecting the party's interest; or when the final determination of the controversy in the party's absence will be inconsistent with equity and good conscience." Flack v. Laster, 417 A.2d 393, 399–400 (D.C.1980) (footnote omitted); see also Raskauskas v. Temple Realty Co., 589 A.2d 17, 20 (D.C.1991); Super. Ct. Civ. R. 19. The District was not an indispensable party for the resolution of the adverse possession legal issue. And, at this point, we doubt that the District is an indispensable party for the determination of the ownership of the disputed property because the historic documents, located in the Office of the Sur-

should also specify that the parties should request that the selected surveyor post property markers around that portion of property now claimed by Solid Rock which properly belongs to Friendship. After the survey is presented to the trial court, and the property markers have been posted, the trial court may issue a final order regarding the ownership of the disputed property.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court, but remand this case to the trial court for further proceedings consistent with this opinion.

*So ordered.*

veyor and in the Office of the Recorder of Deeds, should be adequate to determine who owns that property. Nevertheless, the trial court may revisit this issue, if necessary.